SOLA BASIC INDUSTRIES, INC., Plaintiff-Respondent, v. UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant-Appellant.

Supreme Court

*No. 76–574. Submitted on briefs May 31, 1979.— Decided June 29, 1979.* (Also reported in 280 N.W.2d 211.)

For the appellant the cause was submitted on the briefs of *John A. Kluwin, Eric J. Van Vugt* and *Kluwin, Dunphy, Hankin & McNulty* of Milwaukee.

For the respondent the cause was submitted on the brief of *Robert A. Christensen* and *Foley & Lardner* of Milwaukee.

DAY, J. This case presents a question on the construction of an insurance policy issued by United States Fidelity & Guaranty Company. The insurer appeals from a judgment entered on December 22, 1976 and amended February 1, 1977 by the circuit court for Milwaukee county, awarding the insured, Sola Basic Industries, Inc., $23,121.60. Sola Basic filed a notice of review seeking review of the order for amended judgment, entered February 1, 1977, reducing the judgment from $25,872.43 to $23,121.60.

The questions on appeal are:

1. Is the economic loss suffered by a person other than the insured as the result of negligent repair work

by the insured on a product originally sold by the insured excluded from coverage by the standard definitions and exclusions in this comprehensive general liability policy of insurance?

2. Did the parties stipulate to damages so as to preclude Sola Basic from recovering prejudgment interest?

Sola Basic brought this action to recover under a comprehensive general liability insurance policy issued to Sola Basic by United States Fidelity & Guaranty Company (hereinafter insurer).

The cases arises out of a lawsuit brought by Thunder Bay Manufacturing Corporation against Sola Basic's Hevi-Duty Electric Division. Sola Basic had sold Thunder Bay a transformer for use in its manufacturing process. When Thunder Bay experienced problems with the operation of the transformer, a Sola Basic employee came to Thunder Bay's plant to perform repair work. Thunder Bay's complaint alleged that the repairman negligently repaired the tap changer switch on the transformer by dropping material into the transformer resulting in damage to the windings of the transformer. The damage to the transformer required that it be removed from the plant and be completely rebuilt. This Sola Basic did at its own expense, and it has made no claim upon the insurer for those costs.

Thunder Bay's complaint alleges that while the transformer was out for repairs, it could not use its electric furnaces, and that it sustained damages in that it had to operate by another method. It claimed $60,000 damages against Sola Basic for the cost of additional raw materials, labor, electricity, freight, crane rental, liner bricks and the cost of removing and replacing the transformer.

Sola Basic tendered the defense of Thunder Bay's claim to the insurer which denied coverage and refused to defend. Sola Basic settled with Thunder Bay for $20,000, after notifying the insurer of the proposed

settlement, and then brought this suit against the insurer to recover the $20,000 and an additional $5,000 in legal fees.

The insurer filed a motion for summary judgment and supporting affidavit. Sola Basic filed its own motion for summary judgment, which the trial court rejected as untimely. However, the trial court denied the insurer's motion for summary judgment, determining that there was coverage under the insurance policy. The trial court granted Sola Basic's oral motion for summary judgment under sec. 802.08(6), Stats. (1975).[1]

QUESTION #1: IS THE ECONOMIC LOSS SUFFERED BY A PERSON OTHER THAN THE INSURED AS A RESULT OF NEGLIGENT REPAIR WORK BY THE INSURED ON A PRODUCT ORIGINALLY SOLD BY THE INSURED EXCLUDED FROM COVERAGE BY THE STANDARD DEFINITIONS AND EXCLUSIONS IN THIS COMPREHENSIVE GENERAL LIABILITY POLICY OF INSURANCE?

The sections of the comprehensive general liability insurance policy pertinent to this appeal are the following:

"Coverage B—*Property Damage Liability*. The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of

"A.  bodily injury or

"B.  property damage

---

[1] "802.08  **Summary judgment** . . . (6) JUDGMENT FOR OPPONENT. If it shall appear to the court that the party against whom a motion for summary judgment is asserted is entitled to a summary judgment, the summary judgment may be awarded to such party even though the party has not moved therefor."

to which this insurance applies, caused by an occurrence,

. . . .
*"Definitions:* 'damages' includes damages for death and for care and loss of services resulting from bodily injury and damages for loss of use of property resulting from property damage;

. . . .
" 'property damage' means injury to or destruction of tangible property.

*"Exclusions:* This insurance does not apply:

"(l) to property damage to the Named Insured's products arising out of such products or any part of such products;

"(m) to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; . . ."

The insurer asserts that the only property damage involved in this case was the damage to the transformer itself, and that such property damage was excluded from coverage by either or both exclusions (l) and (m). It argues that in the absence of injury to or destruction of tangible property other than Sola Basic's own product, no property damage liability coverage was afforded.[2]

To determine whether an insurer is obligated to assume the defense of a third-party suit, it is necessary to determine whether the complaint alleges facts which, if proven, would give rise to liability covered under the terms and conditions of the policy. *Grieb v. Citizens Casualty Company of New York,* 33 Wis.2d 552, 557, 148 N.W.2d 103 (1967). Doubts about coverage must be

---

[2] Sola Basic argues that property damage to the transformer caused by the allegedly negligent repair work of its employee was not, in fact, excluded from coverage by the policy. Sola Basic repaired the transformer at its own expense, and made no claim upon the insurer for this damage. In view of our holding in this case, we do not address this argument.

resolved by the insurer in favor of the insured. *Capitol Indemnity Corp. v. St. Paul Fire & Marine Ins. Co.*, 357 F. Supp. 399, 412–13 (W.D. Wis. 1972).

Thunder Bay alleged that it was damaged because it incurred additional costs to operate its plant when the removal of the transformer rendered its electric furnaces unusable. Under the policy, damages were defined to include "damages for loss of use of property." The policy obligated the insurer to pay all sums which Sola Basic became obligated to pay as damages because of "property damage to which this insurance applies, caused by an occurrence, . . ." Property damage is defined by the policy as "injury to or destruction of tangible property." The insurer argues that under exclusions (1) and (m), the insurer had no obligation to pay for damage to the transformer itself, and no claim is made for such damage.

Assuming the insurer is correct as to the effect of subsections (1) and (m), the question is whether Thunder Bay suffered injury to or destruction of tangible property other than the Sola Basic transformer.

An analysis of comprehensive general liability insurance policies, standardized by the National Bureau of Casualty Underwriters and the Mutual Insurance Rating Bureau in 1966, made the following comments about the definition of "property damage" in this type of policy:

"The new definition omits any requirement of physical injury as a prerequisite for coverage. The National Bureau states that the policy will cover the insured's legal liability if no specific exclusion applies even though the tangible property is not physically damaged but is made useless by the act of an insured. An example would be the breaking down of a large piece of contractor's equipment on a public street in such a manner that the street must be closed off for a period of time and the public has limited or no access to the stores located in the block affected. Under the definition of 'damages' loss of use claims from the operators of these stores

would be covered. There is no prerequisite of physical injury to the stores. It seems sufficient that the stores sustained damage when they could not be used for the purpose for which they were designed or intended." Obrist, *The New Comprehensive General Liability Insurance Policy. A Coverage Analysis.* (Defense Research Institute, 1966).

Although decided under a different form of policy, the case of *Hauenstein v. St. Paul-Mercury Indemnity Co.*, 242 Minn. 354, 65 N.W.2d 122 (1954) is frequently cited for its analysis of the concept of injury to property. Under the policy in force, the insurer agreed "to pay any loss by reason of the liability imposed by law or contract upon the insured for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident." The policy excluded liability for "injury to or destruction of . . . any goods or products manufactured, sold, handled or distributed by the Insured. . . ."

In *Hauenstein,* the insured sold plaster to a contractor who used it on a construction job. The plaster shrank and cracked after application, making it necessary for the contractor to remove it and replaster the walls and ceilings. There was no physical injury to any part of the building other than the plaster. While the plaster itself fell within the exclusionary clause of the policy as a product handled, sold and distributed by the insured, the court went on to find injury to the third party's property, stating:

"No one can reasonably contend that the application of a useless plaster, which has to be removed before the walls can be properly replastered, does not lower the market value of a building. Although the injury to the walls and ceilings can be rectified by removal of the defective plaster, nevertheless, the presence of the defective plaster on the walls and ceilings reduced the value of the building and constituted property damage. The measure of damages is the diminution in the market value of the

building, or the cost of removing the defective plaster and restoring the building to its former condition plus any loss from deprival of use, whichever is the lesser." *Id.* at 358.

*Liberty Building Co. v. Royal Indemnity Co.*, 177 Cal. App.2d 583, 2 Cal. Rptr. 329 (1960), involved a policy exclusion similar to the one now before the court. In that case, defective stucco material prepared and used by the insured building contractor in the construction of some homes, deteriorated soon after construction. The buyers of the homes sued the insured for breach of warranty, and the insurer refused to defend, denying coverage on the basis of an exclusion for damages sustained by any "goods or products manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises." The California district court of appeals agreed that there was no coverage and made these observations:

"This Exclusion means that if the insured becomes liable to replace or repair any 'goods or products' or 'premises alienated' or 'work completed' after the same has caused an accident because of a defective condition, the cost of such replacement or repair is not recoverable under the policy. However, if the accident also caused damage to some other property or caused personal injury, the insured's liability for such damage or injury becomes a liability of the insurer under the policy, and is not excluded. For example, if a contractor builds a house and as a result of an improper mixture of the stucco, water is absorbed into the walls and the stucco cracks and falls off and a child is injured by the falling stucco, the injury to the child would not be excluded under Exclusion (f) but the replacement cost of the stucco would be excluded. Also, if the water absorbed into the walls should reach the interior walls and injure a valuable painting hanging there, the damage to the painting would be recoverable under the policy while the damage to the walls would not. The principle here ap-

plicable is well stated in *Heyward v. American Casualty Company of Reading, Pa.* D.C. 129 F. Supp. 4. At page 8 the court said: 'This Exclusion means that the policy will not protect the insured if he has to repair or replace some product or work which proved defective and caused an accident. The Exclusion has no reference to liability for damage to other property or personal injury arising out of such accident.' In accord are *Volf v. Ocean Accident and Guarantee Corp., Ltd.*, 50 Cal.2d 373, 325 P.2d 987; *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.*, 51 Cal.2d 558, 334 P.2d 881." *Id.* at 331–32.

However, *Liberty Building* must be squared with the holding of the California Supreme Court in *Geddes & Smith, Inc. v. Saint Paul Mercury Indemnity Co.*, 51 Cal. 2d 558, 334 P.2d 881 (1959). In that case, a building contractor ordered aluminum doors, door jambs, and attached hardware from the insured, California Aluminum Products. The doors were to be used in houses being constructed by the contractor. Shortly after installation, defects began to appear, requiring that the doors be replaced. The contractor sued Aluminum Products, whose insurer refused to defend, on the ground that damage to the doors was excluded from coverage under the policy issued to Aluminum Products, which excepted "injury to or destruction of . . . goods or products . . . sold by the Insured . . . out of which the accident arises."

Relying explicitly on *Hauenstein*, the California Supreme Court held that while injury to the doors themselves was excluded from coverage, there was property damage to the houses in the form of diminished market value. In the second *Geddes & Smith* case, 63 Cal.2d 602, 47 Cal. Rptr. 564, 407 P.2d 868 (1965), the court allowed all of the contractor's costs associated with the replacement of the defective doors, including additional overhead expenses. In *Geddes & Smith II,* the court distinguished *Liberty Building* and *Volf v. Ocean Accident & Guarantee Corp.*, 50 Cal.2d 373, 325 P.2d (1958), stating:

"Also, the injury to the walls in Volf caused no damage to, or loss of use of, the interior of the house; the wall itself was the only part of the structure affected in any way. In the case at hand the condition of the doors affected the use of entire rooms, and therefore the damage was not limited to the goods or products supplied by Aluminum Products. *Liberty Building Co. v. Royal Indemnity Co.*, 177 Cal. App.2d 583, 2 Cal. Rptr. 329 (1960), involved facts very similar to those found in the Volf case and can be distinguished on similar grounds."

In *Employers Cas. Co. v. Brown Mc-Kee, Inc.*, 430 S.W.2d 21 (Tex. Civ. App. 1968), the insured had manufactured a grain elevator which developed leaks, making it unsuitable for the storage of grain. The purchaser of the elevator sued the manufacturer for lost revenue while the elevator was disabled. The insurer denied coverage, standing on policy exclusions similar to the ones before the court in the instant case. The Texas court concluded that there was no coverage noting that the purchaser's suit was not one for damage to grain, but for loss of revenue. This, the court held, was merely an element of damage to the elevator itself and thus excluded from coverage. However, *Employers Casualty* can be distinguished in that Thunder Bay did not seek damages for lost profits, only damages for the increased costs of operations while the transformer was being repaired.

The insurer puts great reliance on *Hamilton Die Cast, Inc. v. U.S. Fidelity & Guaranty Co.*, 508 F.2d 417 (7th Cir. 1975). In *Hamilton Die Cast* the manufacturer withdrew completed tennis rackets from the market because the insured had failed to comply with contract specifications concerning the porosity of the racket frames. The manufacturer sought damages for loss of investment, loss of anticipated profits, and loss of goodwill. The court held that there was no damage to tangible property alleged, commenting:

"We do not think that the mere inclusion of a defective component, where no physical harm to the other parts results therefrom, constitutes 'property damage' within the meaning of the policy. For example, if an automobile crash results from the failure of its defective tire, the defective component can be said to have caused 'property damage' to the finished product. If, however, some of the tires purchased by the automobile manufacturer are found to be defective and the manufacturer therefore withdraws its cars from the market, there has not been 'injury to or destruction of tangible property,' which is [as noted] the definition of 'property damage' in the policy. We also reject plaintiff's contention that because Midland's complaints implicitly seeks compensation for the loss of use of its machinery for finishing the rackets idled by the alleged lack of quality frames, the suit is one for 'property damage.' Idled machinery is not injured or destroyed tangible property and, therefore, there is no 'property damage' within the coverage of the policy." *Id.* at 419–21.

In a subsequent case, *Dreis & Krump Mfg. Co. v. Phoenix Ins. Co.,* 548 F.2d 681 (7th Cir. 1977), the insured manufactured a defective brake which the buyer was to incorporate into his machinery. The buyer sought to recover for the loss of the use of the special structure built to house the defective press brake, contending that the reduction in the market value of the structure was an injury to property sufficient to satisfy the property damage requirement of the policy. The court applied *Hamilton Die Cast,* and rejected this contention, taking the view that "where property damage is defined as 'tangible' property damage, some actual injury to 'tangible' property must be alleged before consequential damages such as loss of use may be recovered." *Id.* at 687.

However, the holdings of *Hamilton Die Cast* and *Dreis & Krump* were undermined by language in *Pittway Corp. v. American Motorists Ins. Co.,* 13 Ill. Dec. 244, 370 N.E.2d 1271 (1977). In that case, the insured

assembled valves for use in aerosol cans. Helene Curtis, a hair spray distributor, marketed its products in aerosol cans containing the defective valves furnished by the insured. The defect caused leakage of the hair spray, and Helene Curtis was forced to scrap the defective cans because the product was unsaleable. The insured could not recover for the value of the defective valve, since that loss was excluded as injury to products manufactured by the name insured. However, the court held that the inclusion of the defective valve in the finished product caused property damage to the product of a third party to the extent that the market value of the final product was diminished, less the value of the defective component furnished by the insured.

"Neither by the cases cited by the parties nor by our own research have we found an Illinois case which squarely holds that there must be physical harm to the completed product before an insured may recover for property damage under the general liability policy. However, we have found what we conclude to be a majority position which holds that the term 'property damage' includes tangible property which has been diminished in value or made useless irrespective of any actual physical injury to the tangible property." *Id.* at 1274.

Further, while the court approved of the result in *Hamilton Die Cast,* it refused to accept the proposition that coverage for property damage under the policy was dependent on physical injury to property. *Id.* at 1275.

The following principles are derived from these cases about the type of insurance policy involved in this case: 1) The exclusions eliminate coverage for injury to or destruction of the product furnished or work completed by the insured; 2) if the defect in the product furnished or the work completed of the named insured causes damage to other tangible property, there is coverage for such damage to other property; 3) the term "property damage" to tangible property does not necessarily

require physical damage; 4) tangible property may be damaged in that it is diminished in value or made useless, irrespective of actual physical injury to the tangible property.

The cost of removing and replacing the transformer was covered liability under the rationale of *Geddes & Smith, supra,* where recovery was allowed for the costs associated with the removal and replacement of the defective doors. In addition, the removal of the damaged transformer rendered useless Thunder Bay's electric furnaces, and it was forced to incur additional costs to keep operating. These costs do not represent lost profits, but are a measure of the diminution to the value of the plant caused by the malfunctioning transformer. Therefore, under the reasoning of *Hauenstein* and the cases following it, this liability was covered under the policy. We find the reasoning of these cases persuasive and hold there was coverage under the policy in the case before us.

QUESTION #2: DID THE PARTIES STIPULATE TO DAMAGES SO AS TO PRECLUDE SOLA BASIC FROM RECOVERING PREJUDGMENT INTEREST?

At the initial hearing held November 22, 1976, on the motion for summary judgment, the trial court said that summary judgment could not be granted because there remained an issue of fact as to the amount of Sola Basic's damages. On December 6, 1976, the hearing was resumed, and the following discussion took place:

"*The Court:* On this motion, are there no facts in issue?

"*Mr. Van Vugt* (Counsel for the insurer); No, Your Honor, we are prepared to stipulate to the plaintiff's damages, $23,000.

"*Mr. Christensen:* We have no factual issue, Your Honor."

The original judgment reflected prejudgment interest of $1,900.83. However, on February 1, 1977, the trial court amended the judgment to delete prejudgment interest, so that the total judgment was reduced from $25,872.43 to $23,121.60.

In *Wyandotte Chemicals Corp. v. Royal Electric Mfg.,* 66 Wis.2d 577, 591, 225 N.W.2d 648 (1975), this court held that where the parties stipulate to damages, any claim to prejudgment interest must be expressly reserved:

"In the absence of a stipulation that is clearly limited to settling the dispute only as to the principal amount due or absent some other express reservation of the claim for preverdict interest in the face of a stipulation which purports to resolve the entire damage question, the interest claim is disposed of by the stipulation. As the present stipulation was not so clearly limited, and there was no express reservation of the claim, the plaintiffs are bound by that stipulation and are thereby precluded from asserting their interest claim."

Sola Basic argues that the exchange that was recorded on the record was not a stipulation, but a unilateral statement on the part of the insurer. This argument lacks merit, in view of the fact that the first hearing was adjourned expressly because the issue of damages remained disputed. Given the rule of *Wyandotte Chemicals* requiring that the plaintiff expressly reserve the question of prejudgment interest in order to preserve its claim, this discussion can only be seen as a stipulation which disposed of the entire question of damages. We hold the stipulation here precluded the recovery of prejudgment interest.

The rule of *Wyandotte Chemicals* was not modified in *Klug & Smith Co. v. Sommer,* 83 Wis.2d 378, 265 N.W.2d 269 (1969), cited by Sola Basic. The parties in that case had a dispute over the completion of a contract and entered into an agreement attempting to re-

solve their differences. The agreement provided that in the event they resolved their dispute by a certain date, interest would be paid from the date of the agreement. The trial court interpreted the agreement to provide for the payment of prejudgment interest, and this court did not set aside that interpretation. However, this court went on to an alternate analysis, accepting *arguendo* the contention that the agreement was not meant to apply in the event that the dispute went to litigation, and upheld the award for prejudgment interest under the general rules for recovery of prejudgment interest.

*By the Court.*—Judgment affirmed.