**AMERICAN HOME ASSURANCE CO., Plaintiff,**

v.

**LIBBEY–OWENS–FORD COMPANY, Defendant.**

**Civ. A. No. 81–1635–S.**

United States District Court, D. Massachusetts.

May 25, 1984.

Erik Lund, Posternak, Blankstein & Lund, Boston, Mass., for plaintiff.

Sibley Reppert, Herrick & Smith, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

In a scheduling conference on March 6, 1984, I permitted the parties to brief their positions on the proper interpretation of the insurance policy in question in this case. They have requested my rulings in advance of trial, from which I conclude that neither side expects to offer extrinsic evidence bearing on the interpretation of the policy. Specifically, I permitted them to brief their position on (1) the meaning of the term "property damage" in the policy; and (2) the meaning of several exclusions under the policy. Libbey-Owens-Ford ("LOF") argues that all of the damages comprehended in its settlement of the claim against it by the John Hancock Company are covered under the term "property damage" and that none of them are otherwise excluded under the American Home policy. American Home insured LOF for losses exceeding the limits of LOF's other policies. American Home maintains that none of the claims settled represent property damage and that they are, in any case, excluded.

### I. *Background.*

During the relevant period, Aetna carried the primary coverage for LOF with a limit of $1,000,000 per occurrence. Employers Commercial Union Insurance Company issued to LOF an umbrella policy with a limit of $10,000,000 over the primary limit of $1,000,000 per occurrence. The limits on these policies also applied to aggregate losses in any one year. The American Home policy was a second layer excess umbrella policy with a limit of $10,000,000 excess over the underlying limits of $11,000,000 per occurrence.

The American Home policy incorporated the terms of the underlying Commercial Union policy by reference. The pertinent policy provisions are as follows:

[American Home] agrees with [LOF] ... [t]o indemnify the Insured for all sums which the Insured shall be obligated to pay by reason of the liability imposed upon him by law or liability assumed by him under contract or agreement for damages, and expenses, all as included in the definition of "ultimate net loss", because of:

. . . . .

(b) property damage, as hereinafter defined

. . . . .

### DEFINITIONS

. . . . .

3. Property Damage

The term "property damage" shall mean physical injury to, or physical destruction of, tangible property, including the loss of use thereof.

. . . . .

10. **Occurrence**

The term "occurrence" shall mean (a) an accident, or (b) an event or continuous or repeated exposure to conditions, which results during the policy period, in personal injury, property damage, or advertising liability (either alone or in combination) neither expected nor intended from the standpoint of the Insured ... [A]ll personal injury and property damage, (either alone or in combination) arising out of one event or continuous or repeated exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed to be one occurrence...

III. POLICY PERIOD: This policy applies only to occurrences, as herein defined, which happen during the policy period....

IV. EXCLUSIONS: This policy does not apply, except insofar as coverage is

available to the Insured under the underlying policies of insurance set forth in the Declarations:

. . . . .

(c) to claims made against the Insured: (i) for damage to the Named Insured's products arising out of such products or any part of such products;

. . . . .

(iii) for damages for the withdrawal, inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein; (iv) for improper or inadequate performance, design or specification, but nothing herein contained shall be construed to exclude claims made against the Insured for personal injuries or property damage (other than property damage to a product of the Insured) resulting from improper or inadequate performance, design or specification;

. . . . .

The settlement for which LOF now seeks reimbursement covered damages resulting from the failure of some of the windows LOF provided for the John Hancock Tower. John Hancock had sued LOF and several other parties for the following items of damage: (1) Costs of removing and replacing the defective windows and all the other LOF windows of the same type; (2) various additional administrative, maintenance, and construction costs incurred as a result of the defective windows; (3) lost use and rentals of the tower for 33 months; (4) increased operating expenses for the air conditioning and heating systems. The demands totalled over $85,000,000. The total settlement agreed to was for over $30,000,-000. LOF's contribution was $26,000,000. Of the $26,000,000 that LOF contributed, only $7,643,272.98 was reimbursed by LOF's other insurers, because they had already paid part of another major claim during the same policy period. LOF seeks to recover the full $10,000,000 in excess coverage available under the American Home policy.

## II.  Interpretation of the Policy.

### A.  Property Damage.

LOF argues that the term "property damage" should be construed to include a variety of intangible items of loss. I have ruled that the law of Ohio governs the interpretation of the contract. LOF cites an impressive line of cases in support of this proposition,[1] of which the most interesting is *McDowell-Wellman Eng. v. Hartford Acc. and Indem.*, 711 F.2d 521, 525–526 n. 7 (3rd Cir.1983) because it purports to follow Ohio law. The policy provision in that case, and in all but one of the other cases cited, insured "damages because of

1. *Hauenstein v. Saint Paul-Mercury Indemnity Co.*, 242 Minn. 354, 65 N.W.2d 122 (1954); *McDowell-Wellman Engineering Co. v. Hartford Accident & Indemnity*, 711 F.2d 521, 525–526 n. 7 (3d Cir.1983); *Aetna Casualty & Surety Company v. General Time Corporation*, 704 F.2d 80 (2d Cir.1983); *St. Paul Fire and Marine Insurance Co. v. Sears, Roebuck & Co.*, 603 F.2d 780 (9th Cir.1979); *Western Casualty and Surety Co. v. Polar Panel Co.*, 457 F.2d 957 (8th Cir.1972); *Missouri Terrazzo Co. v. Iowa National Mutual Insurance Co.*, 566 F.Supp. 546 (E.D.Mo.1983); *Aetna Casualty & Surety Co. v. PPG Industries, Inc.*, 554 F.Supp. 290 (D.Ariz.1983); *American Motorists Insurance Co. v. Trane Co.*, 544 F.Supp. 669 (W.D.Wisc.) *aff'd*, 718 F.2d 842 (7th Cir.1983); *Continental Casualty Company v. Gilbane Building Co.*, 391 Mass. 143, 461 N.E.2d 209 (1984); *Sola Basic Industries Inc. v. U.S. Fidelity & Guaranty Co.*, 90 Wis.2d 641, 280 N.W.2d 211 (1979); *Geddes & Smith, Inc. v. Saint Paul-Mercury Indemnity Co.*, 51 Cal.2d 558, 334 P.2d 881 (1959); *Elco Industries, Inc. v. Liberty Mutual Insurance Co.*, 90 Ill.App.3d 1106, 46 Ill.Dec. 319, 414 N.E.2d 41 (1980); *Pittway Corp. v. American Motorists Insurance Co.*, 56 Ill.App.3d 338, 13 Ill.Dec. 244, 370 N.E.2d 1271 (Ill.App.1977); *contra Dreis & Krump Manufacturing Co. v. Phoenix Insurance Company*, 548 F.2d 681 (7th Cir.1977); *Hamilton Die Cast, Inc. v. United States Fidelity & Guaranty Co.*, 508 F.2d 417, 419–420 (7th Cir.1975); *Stone & Webster Engineering v. American Motorists Insurance*, 458 F.Supp. 792 (E.D.Va.) *aff'd*, 628 F.2d 1351 (4th Cir.1980).

... property damage" and "damages for loss of use of property resulting from property damage". The court declined to follow an earlier Seventh Circuit opinion in *Hamilton Die Cast, Inc. v. United States Fidelity and Guar. Co.*, 508 F.2d 417 (7th Cir.1975), which held that under Ohio law "property damage", even unmodified by the adjective "physical" in the policy, meant physical damage to property only. The Court of Appeals of the Third Circuit cited no Ohio case to the contrary, but opined that Ohio would be likely to follow what the court perceived as a majority of state court decisions holding that the term property damage is not limited to actual physical damage. *McDowell-Wellman Eng., supra,* n. 7.

Whatever Ohio law may be with reference to the unmodified phrase "property damage", the policy in this case defines property damage to mean *"physical* injury to, or physical destruction of, tangible property, including the loss of use thereof". [Emphasis supplied]. No Ohio case has been cited or discovered which deals with this specific definition.

■ Generally, where property damage is defined as "physical injury to or destruction of tangible property" without more, consequential damages which do not result from physical injury or destruction are not covered. *Wyoming Sawmills v. Transportation Ins. Co.*, 282 Or. 401, 578 P.2d 1253 (1978). The reference to "including loss of use" does not figure in that case (and others to the same effect) and indeed in *Wyoming Sawmills* the policy specifically excluded certain loss of use not resulting from physical injury. 578 P.2d at 1255, n. 1.

The only case cited to me construing language precisely like the language in this policy is *American Motorists Ins. Co. v. Trane Co.*, 544 F.Supp. 669 (E.D.Wis.1982), but even the result in this case is cast in doubt by its equivocal affirmance by the Court of Appeals of the Seventh Circuit in a short opinion appearing at 718 F.2d 842 (7th Cir.1983).

That case involved the failure of heat exchangers manufactured by the defendant to perform properly in four different natural gas liquefaction plants, resulting in a partial loss of production capacity at each plant. Each plant was covered by a different indemnity policy. One of these defined "property damage" as follows:

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof *resulting therefrom,* or

(2) loss of use of tangible personal property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period. [Emphasis supplied]

The district judge held that damages resulting from the manufacturer's liability for the diminution of productive capacity of the plants (i.e., partial loss of use) were not covered by clause (1) of the definition but were covered by clause (2). 544 F.Supp. at 687.

Another plant was covered by the *American Motorists* policy, which defined property damage as follows:

physical injury to or destruction of tangible property ... including the loss of use thereof.

This is precisely the language of the policy in the present case (assuming the foregoing ellipsis conceals no jokers). The court held that under this policy the loss of use experienced by the operator of the natural gas liquefaction plant was property damage and covered. This language is virtually identical with clause (1) of the preceding policy (quoted above) except for the omission of the words "resulting therefrom".

The court of appeals said as follows:

One is directed to the thorough district court opinion, published at 544 F.Supp. 669 (1982) for the details of the lower court's judgment and analysis. After carefully studying that opinion, the appellate briefs, and the case law, we have concluded that we cannot improve upon the district court's decision and opinion. With the addition of a few paragraphs of our own, therefore, we affirm the district

court's judgment and adopt its exceptional opinion as our own.

718 F.2d at 844.

Alas, it is one of those few additional paragraphs which calls in question all that has gone before:

> We agree with the district court that the word "physical" does not so alter the meaning of "property damage" as to remove from the definition the loss of use of Pritchard's plants. The definition still encompasses "loss of use" of "tangible property," which Pritchard clearly claimed. To be sure, the adjective "physical" may mean that the "loss of use" must have its origin in a physical infirmity. In this case, however, such physical infirmities were alleged; the faulty heat exchangers physically impaired full production at the plants. Such physical sources of injury may be distinguished from intangible (non-physical) causes such as the invention of a new technology that renders production plants obsolete and less valuable. Thus drawing all doubts about coverage in favor of Trane, *see Sola Basic Industries v. United States Fidelity & Guaranty Co.*, 90 Wis.2d 641, 646–47, 280 N.W.2d 211, 214 (1979), we conclude that Pritchard's claims against Trane did allege property damage.

The court of appeals in effect affirmed the result by reversing two elements of the district court's decision in opposite directions. The district court held that loss of use need not have its origin in "physical infirmity", assuming, I believe correctly, that the malfunction of the heat exchangers was not physical injury.

The court of appeals opinion in *American Motorists* is not controlling, since it purports to deal with Wisconsin law, and is from another circuit in any case. It is significant, however, because it renders equivocal and uncertain the one judicial interpretation of the very clause with which I am now faced in this case.[2]

In fact, the district judge did not explain her decision, and it is not clear what significance she attributed to the word "including" in the definition of property damage. The importance of the omission of the words "resulting therefrom" is equally unassessable.

Syntactic analysis reveals tension between the word "including", which suggests that loss of use is a sub-set of "physical injury to or physical destruction of tangible personal property" and the word "thereof" at the end of the sentence. "Loss of use *thereof*" must refer to "tangible personal property", because it cannot in good sense refer to "injury" or destruction. Extending the phrase in this way, it would read "including the loss of use of tangible personal property". This suggests that loss of personal property is covered independently of physical injury or destruction. If this definition as above extended is inserted in the insuring clause, the insuring clause reads as follows:

> To indemnify the Insured for all sums which the insured shall be obliged to pay by reason of the liability imposed upon him by law or liability assumed by him under contract or agreement for damages, and expenses, all as included in the definition of "ultimate net loss", because of
>
> .    .    .    .    .
>
> (b) [physical injury to, or physical destruction of, tangible property, including the loss of use *of tangible property*]

Putting all this language together and given the absence of the words "resulting therefrom" at the end of the definition clause, I read this insuring clause as including indemnity for damages for the loss of use of tangible property even though such loss of use did not result from physical injury or destruction of tangible property. I am influenced in part by the fact that damage claims indemnified by the policy

---

**2.** The plaintiff in its brief makes no attempt to either explain or distinguish *American Motor-* *ists.*

include those which arise under a contract, such as damages which might arise from failure of timely delivery, as well as damages arising from operation of law.

These were not negotiated terms but were part of the printed portion of the policy. The foregoing interpretation of the policy is in accord with the universally accepted canon that ambiguities in insurance policies are to be resolved in favor of coverage. *River Services Company v. Hartford Acc. & Indem. Co.*, 449 F.Supp. 622 (N.D.Ohio) 1977.

#### B. *Policy Exclusions.*

##### 1. *Product Exclusion.*

So much of LOF's damages as are attributable to the removal and replacement of the glass which actually failed (other than resulting physical damage to the building) are excluded by exclusions (c)(i) and (c)(iv), as both parties agree.

##### 2. *The Sistership Exclusion.*

■ Policy exclusion (c)(iii), a standard exclusion known as the "sistership exclusion", also applies in this case to exclude some of the alleged damages. Some authorities have interpreted this exclusion to apply only where the insured initiates a mass recall of a product. *Todd Shipyards Corp. v. Turbine Service, Inc.*, 674 F.2d 401, 419 (5th Cir.1982) *cert. denied,* 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982). *Honeycomb Systems, Inc. v. Admiral Insurance Co.*, 567 F.Supp. 1400, 1406 (D.Me.1983); *Arcos Corporation v. American Mutual Liability Ins. Co.*, 350 F.Supp. 380, 384–85 (E.D.Pa.) *aff'd in part and remanded in part,* 485 F.2d 678 (3d Cir.1973); *Yakima Cement Products Co. v. Great American Insurance Co.*, 22 Wash.App. 536, 590 P.2d 371, 374 (1979). However, the language of the exclusion includes no such limitation. The phrases "from the market" and "from use" are connected by the disjunctive "or". I rule that the exclusion applies whether one or many of the insured's products are withdrawn, and whether they are withdrawn from the market before sale or withdrawn

after sale and incorporation into other products. *American Motorists*, 544 F.Supp. at 694; *Charles E. Brohawn & Bros., Inc. v. Employers Commercial Union Ins. Co.*, 409 A.2d 1055, 1057–1058 (Del.1979); *Commercial Union Assur. Co. v. Glass Lined Pipe Co.*, 372 So.2d 1305 (Ala.1979). There is nothing in the language of the exclusion limiting its application to situations where the *insured* withdraws the products. *E.g., Glass Lined Pipe,* 372 So.2d at 1308.

■ *Continental Casualty Co. v. Gilbane Building Co.*, 391 Mass. 143, 461 N.E.2d 209 (1984), a case arising out of the same facts, is distinguishable in application of a similar "sistership exclusion" to the "window wall" of the Hancock Tower. The court declined to apply the "sistership exclusion" because the complaints allege failure of the Tower itself (into which the window wall had been incorporated) and the Tower was unique. In this case, there was the failure of only some of many identical window panes. The remaining windows were removed although they had not failed. Damages resulting from such removal are excluded from coverage of the policy.

### III. *Conclusions.*

#### A. *Windows Which Failed.*

■ The cost of removing and replacing the failed windows is not indemnified damage under the policy. Consequential damages, other than loss of use of the building, are not covered except for actual physical damage to tangible property, including actual physical damage to the building resulting from the act of removing and replacing the windows. Loss of use of so much of the building as is attributable to actual failure of the LOF glass is an element of damages which is indemnified under the policy.

#### B. *Windows Which Did Not Fail But Were Removed.*

Neither the cost of removing the windows which did not fail, nor the cost of

replacement, nor any consequential damages are damages which are indemnified under the policy. Loss of use of the building resulting from the removal of these windows is equally excluded.