Ralph M. BENJAMIN, Sara June Sherkow, Dennis John Farnham, Robert L. Alexander, Kathy Alexander, Douglas B. Frakes, Barbara B. Shapiro, and Monson Construction Co., Inc., a Wisconsin Corporation, Individually and as Partners in Parkwood Village Condominiums, a Wisconsin Partnership, Plaintiffs,

v.

Gerard F. DOHM, Gerald J. Ring, and John W. DeBeck, d/b/a DRD Partnership, and Parkwood Hills Corporation, a Wisconsin Corporation, Defendants-Third Party Plaintiffs-Appellants,†

v.

INSURANCE COMPANY OF NORTH AMERICA, a Foreign Insurance carrier, and Pacific Employers Insurance Co., a Foreign Insurance carrier, Third Party Defendants-Respondents.

Court of Appeals

*No. 93–2879. Submitted on briefs July 14, 1994.—Decided November 17, 1994.*

(Also reported in 525 N.W.2d 371.)

†Petition to review denied.

354

For the defendants-third party plaintiffs-appellants the cause was submitted on the briefs of *Henry A. Field, Jr.* and *Mark J. Steichen* of *Boardman, Suhr, Curry & Field* of Madison.

For the third-party defendants-respondents the cause was submitted on the brief of *Richard A. Hollern, Barbara A. Neider,* and *Joseph P. Wright* of *Stafford, Rosenbaum, Rieser & Hansen* of Madison.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

DYKMAN, J.   Gerard F. Dohm, Gerald J. Ring and John W. DeBeck, d/b/a DRD Partnership, and Parkwood Hills Corporation (collectively "Dohm") appeal from an order of the trial court granting summary judgment dismissing their claim against the Insurance Company of North America and Pacific Employers Insurance Company, subsidiaries of CIGNA Property and Casualty Companies. Dohm impleaded its insurance carrier, CIGNA, to obtain coverage in an action in which Ralph M. Benjamin and other partners of Parkwood Village Condominiums (collectively "Benjamin") sued Dohm for negligent misrepresentation and strict responsibility misrepresentation.

Dohm contends that: (1) the complaint alleges causes of action that fall within the scope of coverage provided by the CIGNA policies; (2) the policy exclusions are inapplicable and do not bar coverage; (3) CIGNA waived its right to contest coverage and its duty to defend when it withdrew its defense without seeking a prior judicial determination of its coverage obligations; and (4) CIGNA is liable for attorney's fees Dohm has incurred in its action against CIGNA for coverage. We conclude that the CIGNA policies do not

provide coverage for the misrepresentation actions, that CIGNA did not waive its right to contest coverage, and that CIGNA is not liable for attorney's fees incurred by Dohm in this action.[1] Consequently, we affirm.

## BACKGROUND

In 1980, Dohm sold to Benjamin and his partners, buildings and land to be converted into condominiums. Unbeknownst to Benjamin, the structures were built on a landfill, and prior to closing, the buildings had begun to settle. Several years later, Benjamin discovered the defects and sued Dohm for negligent misrepresentation and strict responsibility misrepresentation. Benjamin alleged damages in the amount of $3,050,000 including: (1) $550,000 for the loss of uninhabitable units which must be demolished; (2) $200,000 for the loss of past rental income; (3) $200,000 in costs to tear down uninhabitable units; (4) $300,000 for past carrying costs of uninhabitable units; (5) $180,000 for real estate taxes on the uninhabitable units; (6) $200,000 for lost sale proceeds; (7) $590,000 for loss of original partner capital contributions; (8) $300,000 for loss of value of the project; (9) $30,000 for past and future engineering costs; and (10) $500,000 for loss of anticipated profits on the project.

At the time of the closing, Dohm owned several insurance policies issued by CIGNA. Initially, CIGNA provided a defense to Dohm under a reservation of rights. However, by letter dated May 11, 1992, CIGNA informed Dohm that it was denying coverage and

---

[1] Because we conclude that coverage does not exist under the policy, we do not reach the issue of whether any of the policy exclusions preclude coverage.

intended to withdraw its defense within thirty days of receipt of the letter. But, on May 22, 1992, CIGNA informed Dohm that while it was still denying coverage, it would not withdraw its defense until the end of a hearing on its motion for summary judgment which it anticipated to be on August 1, 1992. In December 1992, the trial court denied Dohm's motion for summary judgment and in January 1993, CIGNA withdrew its defense.

Dohm obtained counsel at its own expense and filed a third-party complaint against CIGNA in February 1993 to determine coverage. Upon cross-motions for summary judgment, the trial court determined that coverage did not exist under the CIGNA policies and ordered the third-party complaint dismissed. Dohm appeals.

## STANDARD OF REVIEW

An appeal from a grant of summary judgment raises an issue of law which we review *de novo* by applying the same standards employed by the trial court. *Brownelli v. McCaughtry*, 182 Wis. 2d 367, 372, 514 N.W.2d 48, 49 (Ct. App. 1994). We first examine the complaint to determine whether it states a claim, and then the answer to determine whether it presents a material issue of fact. *Id.* If they do, we then examine the moving party's affidavits to determine whether a *prima facie* case has been made. *Id.* If it has, we then look to the opposing party's affidavits to determine whether there are any material facts in dispute which would entitle the opposing party to a trial. *Id.* at 372-73, 514 N.W.2d at 49-50.

██ The interpretation of an insurance contract is a question of law which we review independently of the trial court. *Katze v. Randolph & Scott Mut. Fire Ins. Co.*, 116 Wis. 2d 206, 212, 341 N.W.2d 689, 691 (1984). We determine an insurance company's duty to defend solely from the allegations contained in the complaint. *Professional Office Bldgs., Inc. v. Royal Indem. Co.*, 145 Wis. 2d 573, 581-82, 427 N.W.2d 427, 430 (Ct. App. 1988). Extrinsic facts will not be considered. *Id.* Any doubts are resolved in favor of coverage. *Sola Basic Indus., Inc. v. United States Fidelity & Guar. Co.*, 90 Wis. 2d 641, 646-47, 280 N.W.2d 211, 214 (1979). Our objective is to further the insured's reasonable expectations of coverage while meeting the intent of both parties to the contract. *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156, 163 (1984). Whether an insurance company has waived its right to contest coverage is an issue of law to which we owe no deference to the trial court. *Barber v. Nylund*, 158 Wis. 2d 192, 195, 461 N.W.2d 809, 811 (Ct. App. 1990).

## POLICY COVERAGE

Dohm contends that Benjamin's complaint alleges a claim that falls within the scope of coverage provided by the CIGNA policies. According to Dohm, the misrepresentations it allegedly made with regard to the structural conditions of the property and buildings are occurrences which caused the property damage alleged by Benjamin. We disagree.

CIGNA's policies provide coverage for:

> all sums which the Insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage

to which this insurance applies, caused by an occurrence and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . . .

The policy defines an occurrence as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured." And, it defines property damage as

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an *occurrence* during the policy period.

The allegations in Benjamin's complaint must state a claim for a liability that Dohm has insured against. *Professional Office Bldgs.*, 145 Wis. 2d at 581-82, 427 N.W.2d at 430. Our review of the complaint shows that the causes of action are for negligent misrepresentation and strict responsibility misrepresentation which allegedly occurred during the closing. The misrepresentations concern structural defects in the buildings and property. Strict responsibility misrepresentation provides a purchaser with the measure of damages representing the difference between the fair market value of the property in the condition when

purchased and the fair market value of the property as it was represented, or the benefit of the bargain. *Luebke v. Miller Consulting Eng'rs*, 174 Wis. 2d 66, 70-71, 496 N.W.2d 753, 755 (Ct. App. 1993). The measure of damages awarded to a party who successfully litigates a claim for negligent misrepresentation is the difference between the fair market value of the property at the time of the sale and the amount actually paid, or the out-of-pocket rule. *Gyldenvand v. Schroeder*, 90 Wis. 2d 690, 697-98, 280 N.W.2d 235, 239 (1979). Thus, the damages alleged in a claim for misrepresentation are for economic loss and are "pecuniary in nature and do not constitute property damage . . . ." *Qualman v. Bruckmoser*, 163 Wis. 2d 361, 366, 471 N.W.2d 282, 285 (Ct. App. 1991).

In *Qualman*, we determined that a policy defining property damage as "injury to or destruction of tangible property, including the loss of its use," did not provide coverage in a claim for breach of contract and misrepresentation resulting from a sale of structurally defective property. *Id.* We explained that "[s]imply because the underlying facts deal with defects in the property sold does not change the nature of the claim [breach of contract and misrepresentation] asserted by the [buyer] against the [seller]." *Id.* at 367, 471 N.W.2d at 285. We determined that the buyer's theories of recovery were breach of contract and misrepresentation. The pleadings did not imply property damage and a loss of use but damages representing the difference between the market value of the property at the time of the purchase and the amount actually paid. *Id.* Therefore, we concluded "[t]here is no question that the defective condition of the house is an element in the [buyer's] complaint. Nevertheless, those defects cannot be considered the *cause* of the [buyer's] damages [the amount

overpaid], even when interpreting both the complaint and the policy broadly." *Id.* at 367-68, 471 N.W.2d at 285 (citation omitted).

As in *Qualman*, Benjamin's theories of recovery are negligent and strict responsibility misrepresentation. The allegations in the complaint do not claim that the misrepresentations caused damage to Benjamin's property but rather that Benjamin suffered economic losses from Dohm's misrepresentations with regard to the value of the property.[2] Misrepresentations about the value of real property do not constitute property damage. The complaint does not state a claim for which CIGNA agreed to indemnify. Consequently, there is no coverage under the policy.[3]

Furthermore, even if Benjamin's complaint implies property damage and a loss of use, coverage still does not exist under the policy. The policy provides coverage for two kinds of property damage: (1) actual physical injury to tangible property and the loss of use

---

[2] Dohm argues that the trial court's interpretation of Benjamin's claims makes it "difficult to imagine when a misrepresentation claim could ever be said to cause damage." Dohm, however, misunderstands the type of damage claimed by Benjamin. In this case, the misrepresentations caused Benjamin to suffer damages representing the amount it overpaid and not for damage to its property. The property was damaged because it was built on a landfill.

[3] Dohm argues that because the policy in *Qualman* was more limited, the *ratio decidendi* should not apply to it. That the policy's definition of property damage in *Qualman* was limited to losses resulting from physical damage and loss of use of such property and did not provide coverage for loss of use of property not physically damaged is of no consequence to our determination. *Qualman*, like our case, concerned a claim for an overpayment and not for property damages. Consequently, the property damage definition contained in the policy is irrelevant.

thereof, and (2) loss of use of tangible property not physically injured or destroyed that is caused by an occurrence. Under either definition, the property damage must be caused by an occurrence.

If we were to construe Benjamin's damages as property damage, we would conclude that coverage still does not exist under CIGNA's policies. With regard to the first definition of property damage, all of the physical destruction and loss of use of property physically destroyed was caused by the structural defects and not by the alleged misrepresentations. Further, with regard to the second definition, any property that Benjamin can no longer use that might not be physically damaged, was also rendered useless because of the defects in the property and not, as Dohm contends, because of its alleged misrepresentations.

Dohm nevertheless contends that our holding in *Western Casualty & Sur. Co. v. Budrus*, 112 Wis. 2d 348, 332 N.W.2d 837 (Ct. App. 1983), warrants a finding of coverage because the second definition of property damage in the CIGNA policies, providing coverage for the loss of use of non-damaged tangible property, is the same as that in *Budrus*. We disagree. In *Budrus*, we examined whether an insurer had a duty to defend against a farmer's claim for loss of crops and production. *Id.* at 350, 332 N.W.2d at 839. The insurance policy provided "coverage for sums that [the insured] shall become legally obligated to pay as damages because of bodily injury or property damage caused by an occurrence." *Id.* at 351, 332 N.W.2d at 839. Property damage was defined as "loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." *Id.* at 351-52, 332 N.W.2d at 839.

363

We determined that the theory of recovery was for property damage because the farmer's damage claim was for a loss of use of non-damaged property resulting from mistagged seed that the farmer purchased from the insured. *Id.*, 332 N.W.2d at 839-40. Consequently, we concluded that the insured's negligent act of selling the mistagged seed caused the farmer to lose the use of his fields and that coverage existed under the policy. *Id.* at 352-53, 332 N.W.2d at 839-40. However, none of Benjamin's property damage was caused by Dohm's negligent acts. Rather, all property damage was caused by the structural defects.

Similarly, in *Sola Basic*, the insured was sued for economic losses suffered by a plaintiff when it negligently repaired a transformer it previously sold to the plaintiff. *Sola Basic*, 90 Wis. 2d at 644, 280 N.W.2d at 212-13. The insured's policy defined damages as "loss of use of property resulting from property damage" and property damage as "injury to or destruction of tangible property." *Id.* at 646, 280 N.W.2d at 213. The court determined that the term "property damage" did not require actual physical damage and concluded that it was the negligent act of the insured that caused the damage covered under the policy. *Id.* at 653-54, 280 N.W.2d at 217.

In *Ehlers v. Johnson*, 164 Wis. 2d 560, 565-66, 476 N.W.2d 291, 294 (Ct. App. 1991), we determined that coverage did not exist where a buyer sued a seller for misrepresenting the lot lines in a sale of land because there was no property damage as defined under the insurance policy which covered losses of use that accompanied physically destroyed property.[4]

---

[4] Dohm also cites in its briefs, *International Ins. Co. v. West Am. Ins. Co.*, 255 Cal. Rptr. 912 (Cal. Ct. App. 1989), in support of its contention that other jurisdictions have determined that

Contrary to *Sola Basic* and *Ehlers*, any property damage and resulting loss of use suffered by Benjamin were caused by the structural defects and not by Dohm's alleged misrepresentations. There is no "causation nexus." Thus, coverage is not provided under either definition of property damage.

## DUTY TO DEFEND

Dohm argues that CIGNA has waived its right to contest coverage by breaching its contractual duty to defend its insured. The CIGNA policies provide that it "shall have the right and duty to defend any suit against the Insured seeking damages on account of . . . property damage . . . ." According to Dohm, CIGNA breached its contractual duty when it withdrew its defense without seeking a prior judicial determination of coverage. We disagree.

The duty to defend is a contractual obligation of the insurer. *Barber*, 158 Wis. 2d at 196, 461 N.W.2d at 811. An insurer will lose its right to contest coverage and to control the defense when it improperly refuses to defend the insured. *Professional Office Bldgs.*, 145 Wis. 2d at 585, 427 N.W.2d at 431. When the insurer contests coverage,

---

misrepresentations may cause property damage. The California Supreme Court ordered that the opinion be not officially published. Cal. Rules of Court, Rule 976. An opinion that is not ordered published shall not be cited for precedential purposes in California. Cal. Rules of Court, Rule 977. Our own rules prevent citing unpublished opinions for precedential value. RULE 809.23 (3), STATS. Consequently, we will not consider this case.

> bifurcated trials are the norm. The insurer may try coverage—generally to the court—first, and if it is found to exist, the liability trial proceeds at a later date. Indeed, "when [a] separate trial on coverage *does not precede the trial on liability and damages[,]*" the insurer "may need to provide a defense"—sometimes to the extent of "be[ing] required to furnish a free defense to its insured prior to the determination of coverage."

*Id.* (quoting *Mowry v. Badger State Mut. Casualty Co.,* 129 Wis. 2d 496, 528-29, 385 N.W.2d 171, 186 (1986)). Thus, even when the trial is bifurcated, the insurer's duties are not suspended pending the outcome of the coverage proceedings. *Mowry,* 129 Wis. 2d at 523, 385 N.W.2d at 183. And, an insurer may be required to defend the insured on the liability issue prior to a determination of coverage. *Id.* at 528-29, 385 N.W.2d at 186.

Consequently, only when the insurer leaves the insured to litigate the liability and damage issues on its own will an insurer have breached its duty to defend and be later barred from litigating coverage. *See, e.g., United States Fire Ins. Co. v. Good Humor Corp.,* 173 Wis. 2d 804, 830-31, 496 N.W.2d 730, 739-40 (Ct. App. 1993) (determining that an insurer who sought a declaratory judgment on the coverage issue after the insured defended the liability issue on its own waived its right to contest coverage). And, once an insurer is found to have breached its duty to defend, the right to control the defense will also be lost. *Grube v. Daun,* 173 Wis. 2d 30, 76, 496 N.W.2d 106, 124 (Ct. App. 1992).

In *Grube,* we explained:

> There are several procedures insurers can use to raise the coverage issue and thus retain their right

366

to challenge coverage. The insurer and the insured could enter into a nonwaiver agreement in which the insurer would agree to defend, and the insured would acknowledge the right of the insurer to contest coverage. However, the insured is not obligated to sign such an agreement. Alternatively, the insurer could request a bifurcated trial or a declaratory judgment so that the coverage issue would be addressed separately by a court. In addition, the insurer could give the insured notice of intent to reserve rights. When a reservation of rights is made, the insured can pursue his own defense not subject to the control of the insurer, but the insurer still would be liable for legal fees incurred.

*Id.* at 75, 496 N.W.2d at 123 (footnote omitted). And, "[a]n insurer does not breach its contractual duty to defend by denying coverage where the issue of coverage is fairly debatable as long as the insurer provides coverage and defense once coverage is established." *Elliot v. Donahue*, 169 Wis. 2d 310, 317, 485 N.W.2d 403, 406 (1992). In *Elliot*, we recommended that "[t]o be entirely consistent with *Mowry*, the insurer should not only request a bifurcated trial on the issues of coverage and liability, but it *should* also move to stay any proceedings on liability until the issue of coverage is resolved." *Id.* at 318, 485 N.W.2d at 406 (emphasis added).

Dohm contends that CIGNA breached its duty to defend and therefore waived the right to contest coverage and control the defense. When Benjamin filed its action against Dohm in early 1991, CIGNA initially provided a defense under a reservation of rights. In May 1992, CIGNA informed Dohm that it had determined that there was no coverage under the policy and therefore had no duty to defend. CIGNA, nevertheless, continued to defend Dohm until the trial court denied Dohm's motion for summary judgment. In January

1993, CIGNA withdrew its defense formally and in February 1993, Dohm filed a third-party complaint against CIGNA contesting the coverage issue.

That this case proceeded on the merits and was then bifurcated is of no consequence when, up to the time CIGNA withdrew coverage, CIGNA provided a defense. The waiver rule is intended to prevent an insured from being forced to defend a trial on the merits on its own. In this case, the underlying liability litigation has not proceeded since the third-party complaint was filed. And, on November 24, 1993, the court granted CIGNA's motion to stay the liability proceeding pending appeal on the issue of coverage. Consequently, CIGNA did not waive its right to contest coverage. And since we conclude that CIGNA did not breach its duty to defend and that coverage does not exist under the policy, the issue of whether it may control the defense is irrelevant.

## ATTORNEY'S FEES

Dohm contends that CIGNA is liable for attorney's fees Dohm has incurred in its action against CIGNA for coverage. Section 806.04(10), STATS., provides that when declaratory relief is sought, the court may make an award of costs as may seem equitable and just. When an insured successfully establishes coverage, an insurer may be liable to the insured for attorney's fees. *Elliot*, 169 Wis. 2d at 322, 485 N.W.2d at 408; *Good Humor Corp.*, 173 Wis. 2d at 836, 496 N.W.2d at 742. Dohm, however, has not successfully proved that coverage existed under CIGNA's policies. Therefore, we conclude that an award of attorney's fees is not warranted.

*By the Court.*—Order affirmed.