Joseph J. JARES, III, M.D. and Susan M. Jares,
Plaintiffs,

v.

Peter F. ULLRICH, M.D. and Cari Ullrich, M.D.,
Defendants-Appellants,

CHUBB INDEMNITY INSURANCE COMPANY, Intervening
Defendant-Respondent.†

Court of Appeals

*No. 02–3100. Submitted on briefs May 8, 2003.—
Decided June 25, 2003.*

2003 WI App 156

(Also reported in 667 N.W.2d 843.)

† Petition to review denied 10-1-03.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Philip A. Munroe* of *Di Renzo and Bomier* of Neenah.

On behalf of the intervening defendant-respondent, the cause was submitted on the brief of *Frederick J.*

*Strampe* and *Matthew R. McClean* of *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. NETTESHEIM, P.J. By declaratory judgment, the trial court ruled that Chubb Indemnity Insurance Company (Chubb) did not have a duty to defend its insureds, Peter F. Ullrich and Cari Ullrich, against the negligent misrepresentation allegations set out in a complaint filed by Joseph J. Jares, III and Susan M. Jares. The Jareses' complaint alleged that a residence they purchased from the Ullrichs was infested with raccoons, other animals, and animal debris, and that the Ullrichs had negligently failed to disclose the condition. The trial court determined that Chubb did not have a duty to defend the Ullrichs because the Jareses' complaint did not establish a causation nexus between the alleged negligent misrepresentation and the Jareses' alleged damage. The Ullrichs appeal.

¶ 2. We reverse. We hold that the Jareses' complaint sufficiently alleges a causation nexus pursuant to *Smith v. Katz*, 226 Wis. 2d 798, 817, 595 N.W.2d 345 (1999) (*Smith II*).[1] We also reject Chubb's further argument that the Jareses' complaint does not allege "property damage" within the meaning of the Chubb policy. We hold that the complaint's allegation of loss of

---

[1] In an earlier decision in the same case, the supreme court concluded that the defendant's insurance policy in the record did not cover the period in which the alleged property damage occurred. *Smith v. Katz*, 218 Wis. 2d 442, 578 N.W.2d 202 (1998). When the record was amended to include a policy covering a later period, the supreme court granted the defendant's motion for reconsideration. *See Smith v. Katz*, 226 Wis. 2d 798, 804, 595 N.W.2d 345 (1999) (*Smith II*).

use of the property constitutes "property damage" under the policy. We reverse the judgment and remand for further proceedings.

## *BACKGROUND*

¶ 3.   Because this case was decided on the basis of the Jareses' complaint against the Ullrichs, we take the facts alleged therein as true and undisputed. On February 20, 2000, in preparation for the sale of their residence, the Ullrichs executed a Real Estate Condition Report. While the report made representations about specific potential defects, it did not expressly address any defects regarding animal infestation. However, the report concluded with a general representation by the Ullrichs that there were no "other defects affecting the property." On or about July 31, 2000, the Jareses purchased the residence from the Ullrichs. In connection with the sale, the Ullrichs provided the Jareses with the report. When the Jareses moved into the home following the closing, they discovered that portions of the residence were "infested with raccoons and other animals, dead animal bodies, their nests, feces, urine, and other matter in the walls and underneath the floors."

¶ 4.   The Jareses' complaint further alleges that the Ullrichs negligently failed to disclose this defect on the Real Estate Condition Report and that the Jareses justifiably relied on the representations regarding the condition of the premises. As to damages, the Jareses alleged that they incurred costs for the repair and restoration of the property as well as loss of use of the property due to their inability to occupy the property for over two months. The Jareses sought compensatory damages for these losses plus their attorney fees.

¶ 5.  The Ullrichs tendered the defense of the Jareses' complaint to their insurer, Chubb. In response, Chubb filed a motion to intervene in order to raise a coverage defense. In the meantime, Chubb asked the trial court to stay the proceedings and to bifurcate the coverage issue from the underlying action. The trial court granted Chubb's intervention requests.

¶ 6.  Chubb then filed a motion for judgment on the pleadings pursuant to WIS. STAT. § 802.06(3) (2001–02)[2] seeking a declaratory judgment that its policy did not provide coverage for the claims alleged by the Jareses. In support, Chubb made two arguments. First, Chubb argued that the Jareses' complaint failed to allege property damage within the meaning of the policy. Alternatively, Chubb argued that even if the complaint did allege property damage, it failed to demonstrate a nexus between the alleged misrepresentation and such damage. In response, the Ullrichs argued that the Jareses' complaint specifically recited that the Jareses had been unable to occupy the property, an allegation that constituted "loss of use" of the property, a species of property damage covered by the Chubb policy. As to the "lack of nexus" argument, the Ullrichs pointed to the Jareses' allegation that it was the Ullrichs' misrepresentation of the animal infestation that induced them to purchase the property.

¶ 7.  Following briefing by both parties and a motion hearing on September 11, 2002, the trial court granted Chubb's motion for declaratory judgment. Citing to *Smith II*, the court agreed with Chubb's alternative argument that there was no "causation nexus" between the negligent misrepresentation and the rac-

_____

[2] All references to the Wisconsin Statutes are to the 2001–02 version.

coon infestation. As a result, the court concluded that Chubb had no duty to defend the Ullrichs against the Jareses' allegations. Given that ruling, the trial court did not reach the issue of property damage. The Ullrichs appeal.

## *STANDARD OF REVIEW*

¶ 8. A judgment on the pleadings is essentially a summary judgment minus affidavits and other supporting documents. We first examine the complaint to determine whether a claim has been stated. If so, we then look to the responsive pleading to ascertain whether a material factual issue exists. Whether judgment on the pleadings should be granted is a question of law that we review do novo. *Freedom from Religion Found., Inc. v. Thompson*, 164 Wis. 2d 736, 741, 476 N.W.2d 318 (Ct. App. 1991).

¶ 9. In addition, an insurance agreement functions as a contract between the insured and the insurer. *Smith II*, 226 Wis. 2d at 806. Therefore, "[i]nterpretation of insurance policies is governed by the same rules of construction that apply to other contracts." *Id.* (citation omitted). The interpretation of an insurance contract presents a question of law that we review de novo. *Id.* at 805. When reviewing an insurance contract it is important to bear in mind that "a contract of insurance is not to be rewritten by the court to bind an insurer to a risk which the insurer did not contemplate and for which it has not been paid." *Id.* at 807 (citation omitted).

## THE LAW OF DUTY TO DEFEND

¶ 10.   In *Smith II*, the supreme court set out the legal test for determining an insurer's duty to defend:

> An insurer's duty to defend its insured is determined by comparing the allegations of the complaint to the terms of the insurance policy. In other words, "[t]he duty to defend is triggered by the allegations contained within the four corners of the complaint." The duty to defend focuses on the nature of the claim and has nothing to do with the merits of the claim. As a result, the insurer may have no duty to defend a claim that ultimately proves meritorious against the insured because there is no coverage for that claim. *Conversely, the insurer may have a clear duty to defend a claim that is utterly specious because, if it were meritorious, it would be covered. The insurer's duty arises when the allegations in the complaint coincide with the coverage provided by the policy.*

*Id.* at 806–07 (citations omitted; emphasis added).

## THE CHUBB POLICY/THE JARESES' COMPLAINT

¶ 11.   Since an insurer's duty to defend is measured by comparing the policy provisions against the allegations of the complaint, we set out the relevant portions of the Chubb policy and the Jareses' complaint.

¶ 12.   The "Personal Liability Coverage" provisions of the Chubb policy provide in relevant part:

> We cover damages a covered person is legally obligated to pay for personal injury or property damage which take place anytime during the policy period and are caused by an occurrence . . . .
>
> . . . .

"Property damage" means physical injury to or destruction of tangible property, including loss of its use . . . .

. . . .

Defense coverages

We will defend a covered person against any suit seeking covered damages for personal injury or property damage.

¶ 13.   The relevant allegations of the Jareses' complaint are the following:

5. That upon moving into the residence after the closing the [Jareses] first discovered that portions of the residence were infested with raccoons and other animals, dead animal bodies, their nests, feces, urine, and other matter in the walls and underneath the floors (hereinafter referred to as the raccoon infestation).

6. That the [Ullrichs] were aware of, or should have been aware of, the said raccoon infestation, and negligently failed to disclose said raccoon infestation to the [Jareses] on [the Real Estate Condition Report], or otherwise.

7. That the failure to disclose the said raccoon infestation by the [Ullrichs] was done to induce the [Jareses] into purchasing the premises.

8. That the [Jareses][3] justifiably, to their damage, relied upon the misrepresentation of the condition of the premises made by the [Ullrichs] on [the Real Estate Condition Report] and by the [Ullrichs'] failure to disclose the said raccoon infestation to the [Jareses].

---

[3] The complaint says that the "defendants" relied upon this misrepresentation. That obviously is a misnomer. The complaint should have said that the "plaintiffs" relied upon the misrepresentation.

9. That as a direct and proximate result of the said misrepresentation by the [Ullrichs] and the raccoon infestation of the premises the [Jareses] were unable to occupy the premises for a period of over 2 months, incurring relocation and additional living expenses totalling $9,441.99.

10. That further, as a direct and proximate result of the said misrepresentation by the [Ullrichs] and the raccoon infestation the [Jareses] incurred repair and restoration costs of $57,216.66 to remove the raccoons, their nests, urine, feces and other matter and to repair and restore the premises to the condition the premises were represented to be in by the [Ullrichs].

## *ANALYSIS*

### *1. Property Damage*

¶ 14.. We begin our discussion by addressing the issue not addressed by the trial court—whether the Jareses' complaint sufficiently alleges "property damage" within the meaning of the Chubb policy. As noted, the policy defines "property damage" as "physical injury to or destruction of tangible property, including loss of its use." The Ullrichs contend that the Jareses' allegation that they were unable to occupy the property for two months constitutes loss of use of the property, which is a form of "property damage" recognized by the Chubb policy.

¶ 15. Chubb responds that the loss of use of the property must be accompanied by "physical injury to or destruction of tangible property," per the phrase immediately preceding the policy's reference to "loss of use." Since loss of use does not represent physical injury to or destruction of the property, Chubb reasons that the

Jareses' complaint fails to allege property damage and there is no coverage. However, Chubb's analysis of the Jareses' complaint is too narrow. Chubb overlooks that besides alleging loss of use, the Jareses' complaint also alleges that the Jareses incurred repair and restoration costs. This latter allegation clearly implies that the residence was damaged, thus satisfying the "physical injury to . . . tangible property" component of "property damage" in the Chubb policy.

¶ 16.   We recognize that in *Smith II*, the supreme court stated that, in most instances, misrepresentations and omissions will not produce property damage as defined in insurance policies. *Smith II*, 226 Wis. 2d at 816–17. However, in the same breath, the court acknowledged that this rule was not absolute and that a complaint making "some reference to loss of use" could suffice as an allegation of "property damage." *Id*. at 817. Here, the Jareses' complaint alleges an inability to occupy the property. That allegation is tantamount to a claim of loss of use. And since the complaint can fairly be read to imply that the residence was damaged by the animal infestation, we hold that the complaint sufficiently alleges "property damage" within the meaning of the Chubb policy.

■■

¶ 17.   The parties also debate as to whether the Jareses' complaint seeks damages for economic loss which would be precluded in this tort action. *See Bay Breeze Condo. Ass'n, Inc. v. Norco Windows, Inc.*, 2002 WI App 205, ¶ 9, 257 Wis. 2d 511, 651 N.W.2d 738; *see also Smith II*, 226 Wis. 2d at 812–13. But the issue at this early juncture of the proceedings is whether Chubb has a duty to defend the Ullrichs. The issue is not whether the Jareses' claimed damages are barred by the economic loss doctrine. As noted, the legal test for

determining an insurer's duty to defend is very narrow. We simply compare the allegations of the underlying complaint against the terms of the insurance policy. *Smith II*, 226 Wis. 2d at 806–07. We hold that the Jareses' complaint survives that process on the question of property damage.

¶ 18. If, in fact, the Jareses' damage claims are barred by the economic loss doctrine, then it is for Chubb to raise that defense not by denying coverage, but rather by asserting it on behalf of the Ullrichs. As noted in *Smith II*, an insurer might well have a duty to defend a specious claim. *Id*. at 807.

### 2. Causation

¶ 19. Next we address whether the Jareses' complaint sufficiently alleges a causation nexus. Relying on *Smith II*, the trial court ruled that the complaint did not establish such a nexus. In determining whether property damage was caused by an occurrence, a reviewing court must look at the alleged misconduct and determine whether a "causation nexus" exists between the alleged misconduct and the damage claimed. *Id*. at 823. Without a "causation nexus," the alleged occurrence cannot cause property damage. *Id*.

¶ 20. The facts of *Smith II* reveal the following. The Smiths purchased a lot in July 1991 but did not discover underground springs on the lot until they prepared for construction in March 1993. *Id*. at 801. When their builder, Paul Katz, began to construct the foundation of the house, the foundation hole filled with water, causing the concrete foundation to collapse three or four times during construction. *Id*. The Smiths filed

suit against the seller alleging breach of warranty, intentional misrepresentation, strict responsibility misrepresentation and negligent misrepresentation. *Id.*

¶ 21.   In addressing causation, the supreme court held that there were several reasons why the seller's misrepresentations did not cause physical injury to the Smiths' property. *Id.* at 823. First, the court noted that the Smiths' purchased the property in July 1991 but there was no physical injury to the property until after March 1993. Second, the court noted:

> In the interim, ownership and control of the vacant lot had changed hands. The Smiths not only decided to build a house but also decided where on the lot the house should be located. They selected Paul Katz and Robert Reisinger to assist them. Someone other than [the seller] decided to continue building the house in the same spot even after its concrete foundation collapsed three or four times.

*Id.* Third, the court noted that the Smiths' additional allegations of negligence against the builder, Katz, and Reisinger provided evidence that the seller's misrepresentations did not cause the property damage. *Id.* The court concluded that "negligent misrepresentations do not cause ground water pressure or cracks in concrete foundations" and "there have been too many 'interruptions' between the 'occurrence' and the 'property damage'—too many decisions and actions by other people—to show an unbroken chain of causation under the policies." *Id.* at 824.

¶ 22.   Chubb likens this case to *Smith II*, reasoning that just as negligent misrepresentations do not cause groundwater pressure, so also negligent misrepresentations do not cause animal infestation. At first blush, this is a tempting argument. But a closer examination of *Smith II* demonstrates that Chubb's reason-

334

ing does not hold up. Although the supreme court in *Smith II* determined that there was not a sufficient nexus under the facts of that case, the court clearly allowed that in another case under different facts, the nexus requirement could be satisfied. The court cited with approval to the following passage from the court of appeals decision in *Welter v. Singer*, 126 Wis. 2d 242, 250, 376 N.W.2d 84 (Ct. App. 1985):

> The Wisconsin Supreme Court, in *Olsen v. Moore*, [56 Wis. 2d 340, 202 N.W.2d 236 (1972)], joined the majority of jurisdictions by adopting the "cause" analysis. That is, where a single, uninterrupted cause results in all of the injuries and damage, there is but one "accident" or "occurrence." If the cause is interrupted or replaced by another cause, the chain of causation is broken and there has been more than one accident or occurrence.

*Smith II*, 226 Wis. 2d at 824.

¶ 23. Here, the facts bearing on causation alleged in the Jareses' complaint are markedly different from those in *Smith II*. First, the Jareses discovered the property damage soon after closing on the residence. Second, the Ullrichs remained in full ownership and control of the property. Third, the residence already existed. Fourth, the Jareses have not alleged any intervening negligent acts by or against any third parties. Moreover, the Jareses' complaint specifically alleges "[t]hat as a direct and proximate result of the said misrepresentation by the [Ullrichs] and the raccoon infestation of the premises the [Jareses] were unable to occupy the premises for a period of over 2 months . . . ."
■

¶ 24. In examining the allegations of a complaint in relation to the terms of an insurance policy, we liberally construe those allegations and assume all reasonable inferences. *Id.*, 226 Wis. 2d at 815. Under

this favorable test and under the test for a "single, uninterrupted" chain of events producing "but one accident" or "occurrence" as set out in *Welter* and *Smith II*, we conclude that the Jareses' complaint sufficiently alleged a nexus between the alleged misrepresentation and the ensuing loss.

¶ 25. In reaching our decision, we acknowledge that prior to *Smith II* Wisconsin law had not recognized that a misrepresentation about a defect in property could cause property damage. Rather, cases had held that it is the defect, not the misrepresentation, that causes the property damage. *See Smith II*, 226 Wis. 2d at 816–17; *Benjamin v. Dohm*, 189 Wis. 2d 352, 359, 525 N.W.2d 371 (Ct. App. 1994). However, the *Smith II* court clarified:

> We are not saying that strict responsibility misrepresentations or negligent misrepresentations can *never* cause "property damage" as defined in the policies, particularly when "property damage" can include "loss of use of tangible property that is not physically injured." But we recognize that the majority view in the cases is that misrepresentations and omissions do not produce "property damage" as defined in insurance policies. They produce economic damage.
>
> Given this well established law, *a complaint claiming strict responsibility misrepresentation or negligent misrepresentation must contain some statement about physical injury to tangible property, some reference to loss of use, or some demand for relief beyond money damages* if the complaint is to satisfy the requirement that "property damage" be alleged within the four corners of the complaint.

*Smith II*, 226 Wis. 2d at 816–17 (second emphasis added; citations and footnotes omitted). The supreme court's language allows that an artfully drafted com-

plaint can provide for coverage. As noted, the Jareses' complaint alleges that the Ullrichs' misrepresentations resulted in the loss of use of the property. We hold that this is a sufficient allegation of the causation nexus under *Smith II*.[4]

¶ 26.    We also reject Chubb's contention that the Jareses' complaint fails to link the Ullrichs' misrepresentation and the animal infestation. Chubb points to

---

[4] Chubb also cites to *Benjamin v. Dohm*, 189 Wis. 2d 352, 525 N.W.2d 371 (Ct. App. 1994), and *Qualman v. Bruckmoser*, 163 Wis. 2d 361, 471 N.W.2d 282 (Ct. App. 1991), in support of its argument that no causation nexus is established by the Jareses' complaint. Both cases hold that allegations of pecuniary loss resulting from structural damage do not constitute "property damage" under the kind of policy language at issue in this case. *Benjamin*, 189 Wis. 2d at 361; *Qualman*, 163 Wis. 2d at 366. Both cases also hold in dicta that even if an allegation of pecuniary loss included a claim for loss of use thereby resulting in "property damage," coverage still would not exist since it was the structural defect, not the misrepresentation, that caused the damage. *Benjamin*, 189 Wis. 2d at 362–63; *Qualman*, 163 Wis. 2d at 367–68.

We do not see these two cases as controlling in the instant case. First, as noted, the statements regarding the effect of an allegation of loss of use were dicta. Moreover, it is not clear from the text of the two cases whether the complaints expressly alleged that the misrepresentations induced the purchasers to buy. Here, the Jareses' complaint expressly alleges that the Ullrichs' misrepresentation was made to induce the Jareses to purchase the property and that the misrepresentation directly and proximately caused the Jareses to lose the use of the property. Again, our duty to defend analysis is limited to a comparison of the language of the complaint against the language of the policy. *Smith II*, 226 Wis. 2d at 806–07. Here, we have an express allegation that the Jareses lost the use of damaged property—the very scenario calling for coverage under the Chubb policy.

the following language in the Jareses' complaint: "That as a direct and proximate result of the said misrepresentation by the [Ullrichs] *and* the raccoon infestation of the premises the [Jareses] were unable to occupy the premises . . . ." (Emphasis added.) Chubb argues that this language alleges two causes of action—the misrepresentation and the infestation—but does not link the two. We decline to read the complaint so narrowly.

¶ 27.   Pursuant to WIS. STAT. § 802.06(6), pleadings are to be liberally construed with a view toward substantial justice to the parties. Likewise, in examining the allegations of a complaint in relation to the terms of a disputed insurance policy, we liberally construe the allegations and assume all reasonable inferences. *Smith II*, 226 Wis. 2d at 815. Chubb's reading of the Jareses' complaint is contorted and hypertechnical. A fair reading of the allegation is that the misrepresentation about the animal infestation caused the damage.

## CONCLUSION

¶ 28.   We conclude that the Jareses' complaint sufficiently alleged both "property damage" within the meaning of the Chubb policy and a "causation nexus" between the alleged misrepresentation and the claimed damage. We therefore conclude that Chubb has a duty to defend the Ullrichs. We reverse the judgment and remand for further proceedings.

*By the Court.*—Judgment reversed and cause remanded.