Michael D. PHILLIPS, Perry A. Petta and
Walkers Point Marble Arcade, Inc.,
Plaintiffs-Appellants,†

v.

Daniel G. PARMELEE and
Aquila Group, LLC,
Defendants,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Intervening Defendant-Respondent.

Court of Appeals

*No. 2011AP2608. Submitted on briefs July 30, 2012.*
*—Decided December 11, 2012.*

2013 WI App 5

(Also reported in 826 N.W.2d 686.)

† Petition to Review Filed.

714

715

716

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Christopher L. Strohbehn* and *Jason D. Luczak* of *Gimbel, Reilly, Guerin & Brown, LLP*, of Milwaukee.

On behalf of the intervening defendant-respondent, the cause was submitted on the brief of *Wayne M. Yankala* of *Mingo & Yankala, S.C.*, of Milwaukee.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. CURLEY, P.J. Michael D. Phillips, Perry A. Petta, and Walkers Point Marble Arcade, Inc. (collectively, "Phillips") appeal the trial court's order granting declaratory/summary judgment to American Family Mutual Insurance Company ("American Family"), an intervening defendant that issued a business owner's policy to Aquila Group, LLC, an entity owned by Daniel G. Parmelee (collectively, "Parmelee"). Parmelee sold an apartment building to Phillips that was covered by the American Family policy. Phillips submits that the trial court correctly determined that there was an initial grant of coverage, but erred in its determination that the asbestos exclusion found in American Family's policy negated any insurance coverage for the damages sought in this suit and relieved American Family of the duty to defend. We conclude, as did the trial court, that there was an initial grant of coverage; however, the asbestos exclusion applies. Consequently, we affirm.

717

¶ 2. This case arises out of damages Phillips sustained as a result of the dispersal of asbestos in a twenty-unit apartment building that he purchased from Parmelee. Phillips sued Parmelee on November 12, 2010. He sought damages for breach of contract/warranty, a violation of Wis. Stat. §§ 895.446 and 943.20 (2009–10), negligence, and punitive damages.[1]

¶ 3. Several months after Parmelee filed an answer, American Family filed a motion to intervene, bifurcate and stay the proceeding. In addition, it filed a counter-claim and cross-claim for declaratory judgment. American Family argued that while the business owners policy it issued to Parmelee in April 2006 covered the apartment building, due to exclusions listed in the policy it did not provide coverage for any damages sought by Phillips. After briefs and arguments by counsel, the trial court granted American Family's motion to intervene on May 9, 2011, and granted its motion for declaratory judgment on September 12, 2011, concluding that American Family's policy did not provide coverage to Parmelee due to the policy's asbestos exclusion; and further, that American Family had no duty to defend Parmelee. Shortly thereafter, Phillips filed a notice of appeal. The parties then stipulated to stay the trial court proceedings while the appeal was pending.

---

[1] Wisconsin Stat. § 895.446 is titled, "Property damage or loss caused by crime; action for." The statute explains that any person who suffers damage or loss by reason of intentional conduct has a cause of action against the person who caused the damage or loss. Wisconsin Stat. § 943.20 is the statute criminalizing theft and lists the penalties for theft.

All references are to the 2009–10 version of the statutes unless otherwise noted.

¶ 4. In his complaint, Phillips alleged that shortly after Parmelee purchased a twenty-unit apartment building in New London, Wisconsin, Parmelee decided to put the property back on the market for sale. Prior to purchasing the building, Parmelee had procured a building inspection and report. This report, dated March 29, 2006, indicated that the building contained various defects. Included in the report was a statement by the inspector that:

> There is probably asbestos in the basement heating supply ducts, [they] must be tested to be sure, so all the areas that are torn and damaged, which are numerous, must be encapsulated for safety. For example, the laundry room with three washers and two dryers [have] several heating pipes with friable asbestos-like insulation. A professional abatement team should further investigate and mitigate the danger.

¶ 5. In the course of negotiating the sale of the building to Phillips, Parmelee completed and signed a real estate condition report for the property. In this report, Parmelee indicated that he was not "aware of the presence of asbestos or asbestos-containing materials on the premises." In addition, he indicated in the report that he was not "aware of a defect caused by unsafe concentrations of . . . other potentially hazardous or toxic substances on the premises."

¶ 6. In September 2006, Parmelee accepted Phillips' offer to purchase the apartment building for $419,000. Prior to accepting the offer to purchase, Phillips was given a copy of the aforementioned real estate condition report and Parmelee again represented in the offer to purchase that "as of the date of acceptance [he had] no notice or knowledge of conditions affecting the Property." Although Parmelee claimed

719

that he turned over his entire file on the property to Phillips for his review prior to accepting Phillips' offer to purchase the building, and that his file contained the March 29, 2006 building inspection report noting the probable presence of asbestos, Phillips denied ever seeing it at that time. Consequently, Phillips claimed that he was not put on notice that the property probably contained asbestos.

¶ 7. In 2007, asbestos was discovered on the property when a contractor hired by Phillips attempted to remove some pipes. As a result, the building was contaminated with asbestos, and the tenants were required to leave. Some time later, Phillips obtained the March 29, 2006 inspection report, which he denied ever having seen before.

¶ 8. As a result of the discovery of the asbestos, Phillips suffered serious financial problems, which ultimately led to the foreclosure of this and other properties owned by Phillips.

¶ 9. As noted, the trial court heard and granted American Family's motion for declaratory/summary judgment on September 12, 2011. American Family made numerous arguments in support of its position that Parmelee had no insurance coverage for the damages sought in this lawsuit. American Family argued that there was no "occurrence" or "property damage," as those terms are defined in the policy, and that several exclusions in the policy, particularly the asbestos exclusion, applied. American Family also argued that the total pollution exclusion and the punitive damages exclusion applied. In granting American Family's motion, the trial court determined that the "negligence claim triggered an initial grant of coverage," but the asbestos exclusion applied. Phillips' appeal followed.

¶ 10. We review a grant of summary judgment by applying the same methodology as the trial court, and our review is *de novo*. *See Emjay Inv. Co. v. Village of Germantown*, 2011 WI 31, ¶ 24, 333 Wis. 2d 252, 797 N.W.2d 844. A party is entitled to summary judgment when there are no disputed issues of material fact and that party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).[2] This case also requires us to interpret an insurance policy, which presents a question of law for our *de novo* review. *See Young v. West Bend Mut. Ins. Co.*, 2008 WI App 147, ¶ 7, 314 Wis. 2d 246, 758 N.W.2d 196. We construe policy language "as it 'would be understood by a reasonable person in the position of the insured.' " *Id.*, ¶ 8 (citation omitted).

¶ 11. When we interpret an insurance policy, we first examine the policy's insuring agreement to determine whether it makes an initial grant of coverage for the plaintiff's claim. *See Olson v. Farrar*, 2012 WI 3, ¶ 41, 338 Wis. 2d 215, 809 N.W.2d 1. If the claim triggers an initial grant of coverage, we then determine whether any of the policy's exclusions preclude coverage. *See id.* Finally, we determine whether an exception to an exclusion reinstates coverage. *See id.*

A. *There was an initial grant of coverage.*

¶ 12. Phillips contends that there is an initial grant of coverage under the policy's language because

---

[2] In this case, the terms "summary judgment" and "declaratory judgment" are used interchangeably. The final order signed by the trial court reads: "American Family Mutual Insurance Company's Motion for Declaratory/Summary Judgment on Insurance Coverage Issues is granted."

the facts alleged in the complaint establish that there was both an "occurrence" and "property damage." Phillips' complaint alleges that Parmelee made false or fraudulent representations concerning the property, and that he did so either knowingly or recklessly. In addition, Phillips alleges that Parmelee negligently failed to disclose the defective condition of the property. Phillips further contends that "the tenants had to leave the property, which resulted in a loss of profits and income, foreclosure of multiple properties, loss of equity in the Property and other properties owned by the Plaintiffs, and other damages."

¶ 13. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions." Similarly, in *Schinner v. Gundrum*, 2012 WI App 31, 340 Wis. 2d 195, 811 N.W.2d 431, this court, in discussing what is an accident, looked at several dictionary definitions of the word "accident." Those included:

> "[a]n event or condition occurring by chance or arising from unknown or remote causes."
>
> . . ."an event which takes place without one's foresight or expectation. A result, though unexpected, is not an accident; the means or cause must be accidental."

*Id.*, ¶ 8 (citations and some capitalization omitted). Applying those definitions, it would appear that the exposure/dispersal of asbestos falls within the definition of an "occurrence." The complaint and Phillips' deposition establish that this occurred when a contractor cut through pipes that were, as it turned out, wrapped in asbestos. Phillips' deposition further explains that the exposure/dispersal of asbestos was unforeseen. This was due to Parmelee's forgetfulness and

hasty filling out of the forms on which he ought to have disclosed the likely presence of asbestos, which—as Parmelee explained in his deposition—may have led to his failure to accurately state what he knew about the property:

Q. Now, why did you . . . indicate that you were not aware of the presence of asbestos or asbestos-containing materials on the premises when you had previously received . . . the report that indicated there was probably asbestos in the building?

A. I filled this form out pretty fast, as Mr. Phillips was on his way over, and just went through – I mean, I can't go back in time in my mind and know exactly, but I just filled it out as quick as I could and checked the boxes that – of things that I remember offhand. Don't remember anything about asbestos, and so I checked "No."

Thus, we conclude that the facts alleged in the complaint and the deposition answers create the possibility of an accident. Because an occurrence is an accident, Phillips fulfills this policy's definition.

¶ 14. As to "property damage," the policy reads:

"Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

Phillips' complaint alleges that the dispersal of the asbestos caused a loss of use of the property and other damages.

723

¶ 15. American Family, on the other hand, submits that this is insufficient to satisfy the property damage definition found in the policy. American Family points to *Qualman v. Bruckmoser*, 163 Wis. 2d 361, 471 N.W.2d 282 (Ct. App. 1991); *Benjamin v. Dohm*, 189 Wis. 2d 352, 525 N.W.2d 371 (Ct. App. 1994); and *Smith v. Katz*, 226 Wis. 2d 798, 595 N.W.2d 345 (1999), as support for its position that what Phillips seeks are actually economic damages, not property damages, and consequently, Phillips' damages do not trigger an initial grant of coverage. However, in the newer case of *Jares v. Ullrich*, 2003 WI App 156, 266 Wis. 2d 322, 667 N.W.2d 843, coverage was found for the Jareses, who purchased a home without having been told by the sellers that it was infested with raccoons and other animals. *See id.*, ¶¶ 1–2. The insurance company in *Jares* argued that property damage requires " 'physical injury to or destruction of tangible property.' " *Id.*, ¶ 15. This court disagreed, concluding that the insurance company's analysis was "too narrow" because the complaint also alleged repair and restoration costs, which implied physical damage to the property. *See id.* Here, the definition of property damage is in fact even broader than the policy in *Jares* because it does not hinge on the existence of physical injury or destruction of tangible property. *See id.*, ¶¶ 12, 14. As noted, the policy definition of "property damage" in the case before us includes "[l]oss of use of tangible property that is not physically injured." Consequently, Phillips has fulfilled the requirements to establish both an "occurrence" and "property damage" and there is an initial grant of coverage.

724

*B. The asbestos exclusion applies.*

¶ 16. Phillips contends that the trial court erred in finding that the asbestos exclusion applies. Phillips makes several arguments. First, Phillips claims that the exclusion is ambiguous. Second, he argues that the asbestos exclusion does not apply to all alleged claims because "the complaint establishes damages beyond those related to the presence of asbestos." Third, he argues that neither the "total pollution" exclusion nor the "expected or intended injury" exclusion applies.

¶ 17. We disagree. The asbestos exclusion found in the policy reads, in pertinent part:

> This insurance does not apply to . . . "property damage" . . . with respect to:
>
> a. Any loss arising out of, resulting from, caused by, or contributed to in whole or in part by asbestos, exposure to asbestos, or the use of asbestos. "Property damage" also includes any claim for reduction in the value of real estate or personal property due to its contamination with asbestos in any form at any time.
>
> b. Any loss, cost, or expense arising out of or in any way related to any request, demand, order, or statutory or regulatory requirement that any insured or others identify, sample, test for, detect, monitor, clean up, remove, contain, treat, detoxify, neutralize, abate, dispose of, mitigate, destroy, or any way respond to or assess the presence of, or the effects of, asbestos.
>
> . . . .
>
> f. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with any of the paragraphs above.

g. Any obligation to share damages or repay someone in connection with any of the paragraphs above.

¶ 18. In addressing the asbestos exclusion, the trial court explained that:

[T]he exclusion, the exclusion is solid. And the acts of negligence relating to that exclusion, we're still at asbestos. We're always at asbestos .... And an insurance company, I don't know how they write an exclusion further than this. If it's asbestos, no (coverage). If it's related to asbestos, no (coverage).

. . . .

[The] exclusion here [is] unfortunately as bright as day. I can't get beyond that exclusion.

Based on that, the court will grant the American Family request to take it out of this matter.

¶ 19. In Phillips' argument to this court, Phillips adopts the argument raised by Parmelee below that the exclusion is ambiguous. "Insurance policy language is ambiguous 'if it is susceptible to more than one reasonable interpretation.' " *Folkman v. Quamme*, 2003 WI 116, ¶ 13, 264 Wis. 2d 617, 665 N.W.2d 857 (citation omitted). "If there is an ambiguous clause in an insurance policy, we will construe that clause in favor of the insured." *Id.* The goal in interpreting insurance contracts is to give effect to the parties' intent. *Id.*, ¶ 12. "[E]xclusions are narrowly construed against the insurer." *Link v. General Cas. Co. of Wis.*, 185 Wis. 2d 394, 399, 518 N.W.2d 261 (Ct. App. 1994).

¶ 20. Phillips reasons that by arguing that the alleged property damage was caused by the presence of asbestos, American Family "impermissibly broadened the language of the exclusion" and created an ambiguity

because there is no mention of the words "accidental dispersal or mere presence" in the exclusion. Phillips claims that the more reasonable interpretation is to limit the exclusion to instances where the "property damage" arises out of the "exposure to" and "use of asbestos," and therefore "does not apply to accidental dispersal or mere presence." In support of this position, Phillips cites *Great American Restoration Services Inc. v. Scottsdale Insurance Co.*, 78 A.D.3d 773, 774–75 (N.Y. App. Div. 2010), where the appellate division of the New York Supreme Court affirmed the trial court's ruling that an insurance policy's asbestos exclusion was ambiguous. In the reply brief, Phillips argues that the exclusion at issue is likewise ambiguous because the exclusion "fails to take into account or explain what form of asbestos is covered by the exclusion." Phillips advances the theory that a reasonable insured would assume the exclusion only covers asbestos in its friable state. We are not persuaded.

¶ 21. Phillips' attempt to create an ambiguity is unavailing. First, we observe that the exclusion here is very broad. The opening sentence advises the insured that "*any loss* arising out of, resulting from, caused by, or contributed to, in whole or in part by asbestos, exposure to asbestos or the use of asbestos" is excluded. (Emphasis added; capitalization omitted.) Given this language, the exclusion would include property damage caused by the accidental dispersal or the mere presence of asbestos.

¶ 22. Further, a reasonable person reading the exclusion would not believe that the property damage had to arise out of the "exposure to" or "the use of asbestos" and not to "accidental dispersal or mere presence." This is so because of the comprehensive language used in the exclusion. Also, given the wording

in the exclusion, a reasonable insured would not think that the exclusion only covers asbestos in its friable state. Indeed, the reasonable insured would, in all likelihood, not know what "friable asbestos" is.[3] We agree with American Family that "the policy language is clear that if any part of any loss is caused in any way by asbestos, the policy provides no coverage."

¶ 23. We also see a significant distinction between the exclusion found in *Great American Restoration Services* and the one in Parmelee's policy. In that case, the court concluded:

> The asbestos exclusion provides that coverage does not apply to "bodily injury" or "property damage" arising out of the "inhal[ation]" or "prolonged physical exposure to" asbestos, the "use" of asbestos in construction, the "removal" of asbestos from products or structures, or the "manufacture, sale, transportation, storage, or disposal" of asbestos or products containing asbestos . . . .
>
> . . . .
>
> Although the asbestos exclusion clause states that no coverage is provided for property damage arising out of the "removal," "disposal," or "use" of asbestos, the subject clause includes no terms indicating that coverage will not be provided for damages arising out of the

---

[3] The glossary of Asbestos Hazard and Emergency Response Act (AHERA) terms found on the Environment Protection Agency's website describes "friable" as: "material . . . that . . . when dry, may be crumbled, pulverized, or reduced to powder by hand pressure and includes previously non-friable material which becomes damaged to the extent that when dry it may be crumbled, pulverized, or reduced to powder by hand pressure." (Available at http://www.epa.gov/region02/ahera/glossary.htm (last visited November 19, 2012)).

unknowing or accidental release or dispersal of asbestos. On this point, the language is susceptible to two reasonable interpretations, and this ambiguity must be construed strongly against [the insurer].

*Id.*, 78 A.D.3d at 775, 777. The American Family asbestos exclusion in the case before us is far more sweeping than the one found in *Great American Restoration Services*.

¶ 24. Moreover, our conclusion is not novel; exclusions similar to that found in the American Family policy have been given effect in other jurisdictions. For example, in *Pro-Tech Coatings, Inc. v. Union Standard Insurance Co.*, 897 S.W.2d 885, 891 (Tex. App. 1995), the asbestos exclusion read:

This insurance does not apply to:

1. "Bodily injury" or "property damage" arising in whole or in part, either directly or indirectly out of asbestos whether or not the asbestos is:

a. Airborne as a fiber or particle;

b. Contained in a product;

c. Carried or transmitted on clothing or by any other means; or

d. Contained in a or a part of[:]

(1) any building;

(2) any building material;

(3) any insulation product; or

(4) any component part of any building, building material or insulation product.

*See id.* (brackets in *Pro-Tech Coatings*). In both the *Pro-Tech Coatings* policy and the policy before us, the

phrase "arising out of" is found in the exclusion.[4] *See id.; see also Rolyn Cos., Inc. v. R & J Sales of Texas, Inc.*, 671 F. Supp. 2d 1314, 1331–32 (S.D. Fla. 2009).

¶ 25. Similarly, in *State Farm Fire & Casualty Co. v. Acuity*, 2005 WI App 77, 280 Wis. 2d 624, 695 N.W.2d 883, this court approved a pollution exclusion, stating that "[t]he phrase 'arising out of' is broad, general, and comprehensive," and "means something more than direct or immediate cause such as originating from, growing out of, or flowing from." *Id.*, ¶¶ 13–14, 18 (citation omitted). Using that definition "arising out of," it is clear that a reasonable insured would believe that any damages caused by asbestos in any number of ways was excluded from coverage. Thus, we are satisfied that the exclusion in American Family's policy was unambiguous and broader in scope than the exclusion found in *Great American Restoration Services*.

¶ 26. Next, we address Phillips' claim that his complaint alleges damages not related to asbestos, including his argument that the negligent failure to disclose asbestos is not covered by the exclusion. We again disagree.

■

¶ 27. In *LaFleur v. Hollier Floor Covering, Inc.*, 774 So. 2d 359 (La. Ct. App. 3 Cir. 2000), an asbestos exclusion applied, which read:

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of or caused by:

1. Asbestos, asbestos fibers or products containing asbestos or to any obligation of the insured to indem-

---

[4] We note that in *Pro-Tech Coatings, supra,* the asbestos exclusion at issue was found not to exclude insurance coverage.

nify or contribute with another because of damages arising out of such injury or damage; or

2. Any supervision, instructions, recommendations, warnings, or advice given or which should have been given in connection therewith.

It is further agreed that we shall have no duty or obligation to provide or pay for the investigation or defense of any loss, cost, expense, claim or suit excluded herein.

*Id.* at 360. In *LaFleur*, Hollier did not dispute the validity of the exclusion, but like Phillips, urged the court to find that some of the acts and omissions fell outside the confines of the asbestos exclusion. *See id.* In finding no merit to the argument, the court wrote:

We find no merit to the arguments presented by [the insured]. The petition alleges negligence in the handling of material containing asbestos fibers and damages resulting from the mishandling of that material. The characterization of several different acts of negligence is of no consequence because each act relates to the asbestos exposure and nothing else.

*Id.* The same is true here—all damages are related to asbestos in some form. Consequently, there are no other damages beyond those arising out of the existence of asbestos in the building.

¶ 28. Finally, we note that because we have already determined that the asbestos exclusion precludes coverage, we need not address the parties' arguments concerning the application of the "total pollution" exclusion or the "expected or intended injury" exclusion. Because our determination concerning the asbestos exclusion resolves the insurance coverage issue, we decline to address these arguments. *See Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶ 48, 326

Wis. 2d 300, 321, 786 N.W.2d 15 ("Issues that are not dispositive need not be addressed.").

¶ 29. For the reasons stated, the order of the trial court is affirmed.

*By the Court.*—Order affirmed.