NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0205n.06

Case No. 22-1835

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

KEVIN KOELZER,

    Plaintiff-Appellee,

v.

AARON WESTRICK, et al.,

    Defendants,

GRAND RAPIDS POLICE OFFICERS
EVAN SAXE, MICHAEL REED, COLE
HOYER, and DEREK HALL,

    Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED
May 07, 2024
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF
MICHIGAN

OPINION

Before: SUTTON, Chief Judge; GRIFFIN and READLER, Circuit Judges.

SUTTON, Chief Judge. On the trail of a fleeing driver, Grand Rapids police encountered an inebriated Kevin Koelzer and thought he matched the description of their suspect. Koelzer submitted to an investigatory *Terry* stop. When the officers believed they felt Koelzer's arm tensing, they accused him of resisting their efforts and, after a scuffle, arrested him. A Michigan jury acquitted Koelzer of resisting police, after which he sued the officers for wrongfully arresting him and for using excessive force. On summary judgment, the district court determined that genuine disputes remained about Koelzer's behavior and denied the officers' request for qualified immunity. We affirm.

I.

Around 2:00 in the morning on April 28, 2018, Officer Aaron Westrick of the Grand Rapids Police Department spotted two men making suspicious movements inside a silver Ford Taurus. Upon seeing him, the driver sped off through a stop sign and refused to halt even after Officer Westrick activated his siren in pursuit. By the time the officer located the car, both occupants had fled. Eyewitnesses stated that two white men in blue jeans and t-shirts had run south, one with a limp. Inside the car, police found a BB gun and drug paraphernalia, including a prescription bottle for Andrew Perry. Police located Perry hiding behind a nearby house and arrested him on outstanding warrants.

Around the same time, police received a call about an individual attempting to hitchhike near the crime scene. Officer Evan Saxe canvassed the area and spotted Koelzer, who "matched the description" of one of the suspects, seemed to limp, and was wearing a hoodie. R.119-10 at 3. As it happens, he was inebriated with a blood alcohol level of at least 0.252 mg/dL. Officer Saxe believed Koelzer matched the description of the fleeing suspect. He performed an investigatory *Terry* stop of Koelzer to determine his connection to the Ford Taurus.

Bodycam footage shows what happened next. Officer Saxe told Koelzer to "come here" and "take your hands out of your pockets," which Koelzer did. Ex. A-4 at 1:42–46. As other squad cars pulled up, Officer Saxe told Koelzer to put his hands on his head, and he complied. Officer Saxe grabbed Koelzer by his right arm, told him to keep his hands on his head, and, with the help of Officer Michael Reed, walked him to a parked squad car. Officer Saxe explained that the officers would remove Koelzer's backpack and warned Koelzer that the police were going to reposition his right hand. As Officer Saxe took off the backpack, another officer asked Koelzer's name. Koelzer answered the question, but when the officer replied, "huh," Koelzer slurred, "I

2

don't have to tell you that." *Id.*at 2:08–11. The officer asked "what," and Koelzer again said that he did not have to tell them. *Id.* at 2:11–14. The officer replied, "Oh, OK." Ex. A-5 at 0:11–13.

With Koelzer's backpack off, the officers continued to grab his arms and commanded him to keep his hands on his head. Believing they felt his arms tensing, Officers Saxe, Reed, and Cole Hoyer pushed Koelzer onto the hood of the car, at this point yelling to keep his hands on his head. Officer Saxe struck Koelzer with his knee as the three forced Koelzer to the ground and shouted to move his arm onto his head. A fourth officer, Derek Hall, ordered Koelzer to "stop resisting" as he assisted the others in handcuffing Koelzer, to which Koelzer replied, "I'm not." *Id.* at 0:55–1:10. Officer Reed used his finger to apply pressure to Koelzer's right mandible and, after a second or two, to the area below his eye, forcing Koelzer to place his hands behind his back.

After securing the handcuffs, the officers picked Koelzer off the ground, frisked him, and placed him inside the vehicle. When told he had to wait in the car, Koelzer asked, "Why?" Ex. A-2 at 12:12–18. An officer responded, "You're under arrest." Ex. A-5 at 3:19–21. "Why? For What?" Koelzer replied. *Id.* at 3:21–25. "For resisting," the officer explained, "and possible other things." Ex. A-2 at 12:18–24.

Officer Westrick arrived and believed that he recognized Koelzer from the car, but he could not tell if Koelzer had been the driver. The officers transported Koelzer to a nearby hospital for an evaluation and blood tests. The officers turned Koelzer over to medical staff and left him a citation for resisting arrest in violation of a local law. Code of the City of Grand Rapids, tit. IX, ch. 152, art. 1, § 9.135(1).

The police declined to charge Koelzer and Perry in connection with the Ford Taurus incident, but they pursued charges against Koelzer on the resisting-arrest charge. Koelzer asked a state court to dismiss that charge because the police lacked probable cause to arrest him. After a

hearing, the court found that the police had acted in the lawful scope of their duties when they stopped Koelzer and allowed the case to proceed to trial. Koelzer asked the state appellate court to review the decision, but it declined to accept his interlocutory appeal. The jury acquitted Koelzer.

Koelzer filed this § 1983 action against the four officers who wrestled him to the ground and arrested him. He also sued Officer Westrick, other Grand Rapids police officials, the hospital, and several of its doctors. The defendants asked for summary judgment, claiming that the previous prosecution estopped Koelzer's present claims and that they should receive qualified immunity anyway. The district court granted that motion in part but denied it as to the four arresting officers on Koelzer's claims of wrongful detention, wrongful arrest, and excessive force. The officers asked for reconsideration, arguing that Koelzer resisted a valid *Terry* stop. The court declined, concluding that a genuine dispute remained over whether the police acted lawfully after the initial frisk.

## II.

The officers raise three arguments in this qualified-immunity appeal. They argue that estoppel prevents Koelzer from relitigating the Michigan trial court's ruling that the officers possessed probable cause to arrest him. They claim that, even though the Fourth Amendment's requirements for undertaking a lawful arrest were clearly established at the time of this incident, they did not unlawfully arrest Koezler. And they claim that, even though the Fourth Amendment's excessive force requirements were clearly established in this instance, they did not use excessive force in arresting Koezler.

*Jurisdiction.* Before addressing these arguments, we must assure our jurisdiction over them. On an appeal from the denial of qualified immunity, we have interlocutory jurisdiction over

any legal challenge raised by the officers. *DiLuzio v. Village of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015). The officers "accept" Koelzer's factual assertions about the encounter. Appellant's Br. 5, 14, 50; *see Meadows v. City of Walker*, 46 F.4th 416, 421 (6th Cir. 2022). In this factual setting, the officers claim as a matter of law on appeal that they had probable cause to arrest Koelzer and to use reasonable force against him, just as the law permits them to do in this interlocutory setting. *See Wright v. City of Euclid*, 962 F.3d 852, 867–68 (6th Cir. 2020). We also possess jurisdiction over the officers' estoppel argument. Whether the Michigan court's decision binds Koelzer in this § 1983 lawsuit presents a question of law. *Peterson v. Heymes*, 931 F.3d 546, 553 (6th Cir. 2019); *Roberson v. Torres*, 770 F.3d 398, 402–03 (6th Cir. 2014).

Koelzer objects that estoppel arguments do not warrant an immediate appeal. True or not, we have pendent jurisdiction over the argument. Resolution of the estoppel argument is "necessary to ensure meaningful review" of the denial of qualified immunity because resolution of the one claim directly affects resolution of the later one. *Chaney-Snell v. Young*, 98 F.4th 699, 709, 711–12 (6th Cir. 2024); *Archie v. Lanier*, 95 F.3d 438, 443 (6th Cir. 1996) (quotation omitted); *cf. Summers v. Leis*, 368 F.3d 881, 890 (6th Cir. 2004).

*Estoppel.* Turning to the merits, the officers argue that the Michigan trial court's determination that the police lawfully arrested Koezler precludes him from challenging that ruling here. *See People v. Gates*, 452 N.W.2d 627, 631 (Mich. 1990). Federal courts treat state-court judgments as preclusive if the State's own law would do the same. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Michigan courts permit litigants to apply criminal decisions to civil cases. *See People v. Trakhtenberg*, 826 N.W.2d 136, 141–42 (Mich. 2012). All that they require is that a valid and final judgment decide an actually litigated issue and that the parties had a full and fair opportunity to litigate the issue. *Peterson*, 931 F.3d at 554.

Issue preclusion does not apply in this instance because Koelzer did not have a full and fair opportunity to litigate the question of probable cause. This requirement "normally encompasses the opportunity to both litigate and appeal." *Monat v. State Farm Ins. Co.*, 667 N.W.2d 843, 847 (Mich. 2004). Preclusion does not apply when a party "could not, as a matter of law, have obtained review of the judgment in the initial action." *Id.* (quotation omitted) (emphasis omitted). Because the jury ultimately acquitted Koelzer, he could not appeal the unfavorable interlocutory ruling that the officers had probable cause. *See Jones v. City of Elyria*, 947 F.3d 905, 915 (6th Cir. 2020) (so concluding under Ohio law).

The officers reply that Michigan permits Koelzer to apply for interlocutory appeal, thereby giving him the opportunity to litigate the issue. *See* Mich. Comp. Law § 600.8342(2). Michigan appellate courts, it is true, sometimes have exercised discretionary interlocutory jurisdiction to grant review and quash an information charging resisting arrest and obstructing the police. *See People v. Murawksi*, ___ N.W.3d ___, No. 365852, 2023 WL 7097124, at *1 & n.1 (Mich. Ct. App. Oct. 26, 2023) (per curiam). But the court declined to exercise review here, and Koelzer's acquittal precluded him from obtaining review from that court "as of right." Mich. Comp. Law § 600.8342(2). Collateral estoppel does not apply. *Jones*, 947 F.3d at 915.

*Wrongful Detainment and Arrest.* The Fourth Amendment, as incorporated by the Fourteenth Amendment, requires police to have probable cause that a suspect committed a crime before they arrest him. *Id.* at 914. The officers do not dispute the district court's conclusion that this right was clearly established at the time of the incident. They thus challenge only whether a constitutional violation occurred.

The officers arrested Koelzer for violating a city ordinance against "knowingly and willfully . . . resist[ing] or obstruct[ing] any police officer or other law enforcement officer in the

6

performance of his or her duties as such." Grand Rapids Code, tit. IX, ch. 152, art. 1, § 9.315(1). That ordinance refers to a state law covering the same conduct. It defines obstruction to include "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." Mich. Comp. Law § 750.81d(7)(a); *see also id.* § 750.479(8)(a). The state law preserves the common-law right to resist unlawful arrests. *People v. Moreno*, 814 N.W.2d 624, 634 (Mich. 2012). Resistance includes "physical interference" with an officer. *People v. Philabaun*, 602 N.W.2d 371, 375 (Mich. 1999) (per curiam) (quotation omitted). Whether conduct rises to that level is "decided case by case." *Id.* (quotation omitted).

The district court correctly denied qualified immunity to the officers on this count. A suspect does not necessarily resist police when he fails to surrender immediately or comply with every single command, especially when the police fail to explain to an inebriated suspect that he is under arrest. *See LaPlante v. City of Battle Creek*, 30 F.4th 572, 580 (6th Cir. 2022). As the bodycam video of the incident shows, Koelzer complied with the officers' initial commands to take his hands out of his pockets, put them on his head, and follow them to the car to take off his backpack. He also gave them his name when asked. Even though he refused to give his name when immediately asked again, one of the officers told him that was "OK." Ex. A-5 at 0:11–13. When the officers commanded him to stop resisting, Koelzer denied that he was resisting and said he was relaxed. *See Meadows*, 46 F.4th at 420 (noting a jury could credit a suspect's claims that he was not resisting given his overall compliance up to that point). The bodycam videos show no "other acts of defiance," such as verbal abuse or physical contact, as the police attempted to handcuff the inebriated Koelzer. *Rudlaff v. Gillispie*, 791 F.3d 638, 641–42 (6th Cir. 2015). A reasonable jury could conclude that the officers lacked probable cause to think Koelzer willfully or knowingly resisted. *Cf. Meadows*, 46 F.4th at 421–22.

7

The officers reply that Koelzer's proximity to the Ford Taurus and his partial match with the eyewitness descriptions established reasonable suspicion necessary to detain him for the purposes of investigation. *See Terry v. Ohio*, 392 U.S. 1, 27–30 (1968). That is true—in part. Police indeed may detain an individual to investigate a reasonable suspicion that he participated in a crime if they use the "least intrusive means reasonably available" to investigate. *Dorsey v. Barber*, 517 F.3d 389, 398 (6th Cir. 2008) (quoting *United States v. Perez*, 440 F.3d 363, 372 (6th Cir. 2006)). In some settings, that could include handcuffing a suspect. *See id.* at 399; *Houston v. Clark Cnty. Sheriff Deputy John Does 1–5*, 174 F.3d 809, 815 (6th Cir. 1999). Knowing resistance to a lawful *Terry* stop in turn generates probable cause to arrest a suspect for resisting or obstructing the police. *See People v. Corr*, 788 N.W.2d 860, 863–64 (Mich. Ct. App. 2010) (per curiam); *see also People v. Feeley*, 885 N.W.2d 223, 227, 231 (Mich. 2016).

The problem here is not the initial *Terry* stop; it's what the officers did after it. Even if for the sake of argument we accepted the officers' safety needs to handcuff Koezler given the possibility he was armed, a jury could still reasonably conclude that the way they went about it— slamming Koelzer onto the hood, kneeing him to the ground, applying a pressure point to his eye, and transporting him to the hospital—transcended the explanation for the initial stop and handcuffing. Even if this use of force proved reasonable for the purposes of the stop, moreover, the police still needed probable cause to arrest him afterwards for "resisting and possible other things." Ex. A-2 at 12:18–24. Viewing the video in the light most favorable to Koelzer, a jury could find that a reasonable officer would not have possessed probable cause to think Koelzer offered knowing or willful resistance to the *Terry* stop.

The officers respond that, even if Koelzer did not offer physical resistance, they still possessed probable cause to arrest him for disobedience because he failed to give his name.

Refusing to give one's name during a lawful *Terry* stop sometimes provides probable cause to believe that the suspect has violated the Michigan law against resisting and obstructing police. *Barrera v. City of Mount Pleasant*, 12 F.4th 617, 621–24 (6th Cir. 2021); *see also Stricker v. Township of Cambridge*, 710 F.3d 350, 363 (6th Cir. 2013). But unlike the situation in which a suspect refuses to identify himself "after repeated requests," a genuine question of fact remains about whether Koelzer had complied with the identification orders. *Barrera*, 12 F.4th at 619. Not only did Koelzer identify himself clearly the first time he was asked (it's easy to hear from the bodycam video), but a reasonable jury also could find that one of the officers approved of Koelzer's later refusal by saying it was "OK." Ex. A-5 at 0:11–13.

The officers argue that they possessed probable cause to arrest Koelzer for fleeing and eluding Officer Westrick, noting that he positively identified Koelzer as one of the car's passengers and that a K-9 unit tracked the scent from the car to Koelzer's location. But they have forfeited that issue on appeal because they previously argued only that they possessed probable cause to arrest Koelzer for resisting and disobeying police. *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011–12 (6th Cir. 2022). Even if the officers had preserved this issue, moreover, a reasonable jury could still find the facts insufficient to support probable cause of the offense, not least because the police themselves ultimately reached the same conclusion and declined to charge Koelzer with fleeing and eluding and because material factual discrepancies remain between the eyewitness' description of the suspects and Koelzer.

*Excessive Force.* The officers argue that they should receive qualified immunity on Koelzer's claim that they used excessive force against him. Although we ordinarily evaluate each defendant's participation in an excessive force claim individually, *see Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997), the officers do not distinguish their roles from one another or challenge

the district court's joint analysis. We will follow their lead and do the same. To assess whether force exceeds an individual's constitutional right against unreasonable seizures, we consider (1) the severity of the crime at issue, (2) whether the individual posed an immediate threat, and (3) whether the individual actively resisted arrest. *Meadows*, 46 F.4th at 420.

The severity of the crime suggests that police could have used some degree of force against Koelzer. Police initially suspected that Koelzer had committed the offense of fleeing and eluding an officer, Mich. Comp. Law § 257.602a, a felony that may justify a moderate degree of force, *Ryan v. Hazel Park*, 279 F. App'x 335, 338 (6th Cir. 2008).

A genuine dispute of material fact exists on the second factor, whether Koelzer posed an immediate threat to the officers. Koelzer generally complied with the commands to take his hands out of his pockets and submit to a frisk. Drawing all inferences in Koelzer's favor, a reasonable officer would not believe that Koelzer—acquiescent and polite if also inebriated—proved much of a threat. *See Meadows*, 46 F.4th at 420.

The third factor, whether Koelzer actively resisted, also presents a genuine dispute for the jury to resolve. Although Koelzer did not perfectly comply with the officers' commands to keep his hands in the air, the jury could still find from the bodycam video that he did not offer resistance. *LaPlante*, 30 F.4th at 580. And if a jury concluded that Koelzer did not resist arrest, police could not have used "injurious physical force" to subdue him. *Meadows*, 46 F.4th at 422.

Putting these three factors together, the police may have been able to use a mild degree of force against Koelzer in connection with their investigation of the fleeing offense. *See Dorsey*, 517 F.3d at 398–99. But a jury could still conclude that the police violated Koelzer's rights when they applied pressure to his eyes "so painful it was crazy," R.119-3 at 182, and struck him "so many times" that he wasn't sure "what body part" the police hit him with, *id.* at 117. The use of

knee strikes to subdue Koelzer likewise would prove excessive if the jury found that Koelzer did not resist the stop. *See Rudlaff*, 791 F.3d at 642 ("A simple dichotomy thus emerges: When a suspect actively resists arrest, the police can use a taser (or a knee strike) to subdue him; but when a suspect does not resist, or has stopped resisting, they cannot.").

The officers challenge this evaluation by noting other facts that could have made Koelzer seem more dangerous. They note that the driver of the Ford Taurus had fled Officer Westrick and left behind drugs and a BB gun, evincing a threat to the public and officers. They emphasize that Koelzer refused to repeatedly identify himself or to constantly keep his hands raised on his head throughout the duration of the encounter. And they stress that Koelzer was intoxicated and unpredictable. Those are all valid arguments that the officers may raise before a jury. But drawing all inferences in Koelzer's favor, the jury could also find that the circumstances did not warrant the officers' efforts to obtain physical control over Koelzer's body. *See Meadows*, 46 F.4th at 421.

We affirm.